Elwell v. Walker.

ELWELL v. WALKER ET UX.

1. **Evidence:** STATUTE OF FRAUDS: ANTE-NUPTIAL AGREEMENT. Where an ante-nuptial contract for the conveyance of land was alleged to have been made by letters which were lost, *held*, that parol evidence of their contents, to be admissible, should purport to give their language, and that testimony as to the propositions made and accepted therein, as construed by the witnesses, was incompetent.

2. **Fraudulent Conveyance:** FACTS CONSIDERED. Facts considered which were held to render a conveyance of land, by a husband to his wife, fraudulent as against his creditors.

*Appeal from Pottawattamie District Court.*

MONDAY, OCTOBER 27.

ON the 10th day of February, 1877, the guardians of the person and estate of the plaintiff recovered a judgment against the defendant Thomas A. Walker, for $914. An execution was issued upon said judgment, and returned unsatisfied for want of property whereon to levy. The debt on which said judgment was rendered was contracted November 3rd, 1870, by the sale of certain real estate by plaintiffs to the said Walker for the sum of $20,000. A payment of $5,000 was made by said Walker at the time of the purchase, and he gave his promissory note for $15,000, payable on the 6th day of September, 1878, bearing interest at six per cent per annum, payable annually, and secured by a mortgage upon the real

estate purchased.    The judgment for $914 was for interest due on the deferred payment.

. The defendants are husband and wife, and this action was brought to set aside certain conveyances of real estate made by Thos. A. Walker to his said wife on the 22nd day of March, 1872, and to subject the same to the payment of the said judgment.   It is averred in the petition that said conveyances were made without consideration, and that they were fraudulent as against the plaintiff, who was at the time a creditor of said Thomas A. Walker.

The defendants, by their answer, alleged that the mortgage given by said Thomas A. Walker to the guardian of the plaintiff was ample security for the debt and interest thereon, and that at the time of said conveyances by Walker to his wife he was, and still is, the owner of a large amount of real estate not included in said conveyance, "and was the owner of personal property, notes and credits, to an amount in excess of his indebtedness, and was perfectly responsible, solvent and unembarrassed financially, and said conveyances were made in good faith and without intent to defraud."

Afterward the defendants amended their answer, by averring that they "were married in June, 1871, and that prior to their marriage, and as an inducement thereto, said Thomas A. Walker agreed and promised to convey to defendant Mary C. Walker, then Mary C. Williams, all of his property and interests in Iowa, as a marriage settlement; that said agreement was evidenced by certain letters written and signed by defendants, respectively, in February, 1871; that said letters are lost or destroyed; that said letters were relied on by defendant Mary C. Walker, up to the marriage, and subsequently defendant Thomas A. Walker conveyed to her all his Iowa property and interests, by the deeds set out in plaintiff's petition; that said conveyances were made strictly in pursuance of said ante-nuptial agreement, and in consideration of said agreement and marriage; that at the date of said agreement and marriage Thomas A. Walker owned real estate to the value of more than a half million of dollars, most of which was improved real estate in St. Louis, Mo.; that, under the

circumstances, said marriage settlement was a just, fair, and proper provision for Mary C. Walker, and ought to be sustained."

The plaintiff, in reply, denied that her debt was sufficiently secured by said mortgage, because the mortgaged property had greatly depreciated in value, and defendant had purposely let it go to ruin and decay; denied that Thomas A. Walker was solvent when he made the conveyances to his wife, and alleged that he was then indebted in the sum of $235,000; denied that any agreement was made for a marriage settlement, or that said deeds were made in pursuance of any such contract or agreement.

Upon these issues, the cause was tried to the court upon written evidence, and a decree was entered dismissing the plaintiff's petition, and a judgment was rendered against her for the costs of the action. Plaintiff appeals.

*Daily & Burke* and *Robert Percival*, for appellant.

*Clinton, Hart & Brewer*, for appellees.

ROTHROCK, J.—I. The issue as to whether there was a binding ante-nuptial contract between the defendants is material to a proper determination of the case, and to that question we will first direct our attention. That there may be no mistake, and that the facts and our conclusion thereon may be fairly understood, we will here set out all the evidence upon that branch of the case. The defendant Thomas A. Walker testified as follows: "The name of my wife before marriage was Mary C. Williams; she resided with her parents in Council Bluffs, Iowa; I proposed marriage to her in the fall of 1870. On several occasions the subject of conveying the property to her was spoken of, and in February, 1871, I wrote from St. Louis, suggesting making the conveyance at that time; it was not completed on that occasion, from some objections she made; I don't recollect exactly what they were; it was held as a future transaction to be completed at some future time. The property I proposed to settle on her was all I had in Iowa; my Iowa interests; I have not now the letter I wrote to her in

1871; it was signed by me and addressed to Miss Mary C. Williams; in that letter I made the proposition, with her consent, of making her a deed of conveyance of my Iowa property, to her; the proposition was made in that letter; it was made verbally before that. The idea was to make an independent settlement upon my wife; my interests in the Iowa property which I owned was alone the subject of the proposed conveyance. I received a reply to the letter, signed by Miss Mary C. Williams; I received it in Saint Louis; that reply is lost; I have made search for it, but I cannot find it; I recollect the contents of it; the proposed conveyance was objected to—that is, to be made at that time—for the reason that in case of my death any time soon it would be taking the property out of my family's possession; my relatives in New York were meant. The acceptance of the conveyance was held for some future time; there might have been a day fixed, but I don't recollect exactly, but the conveyance was accepted conditionally, and the conveyance to be delayed for a period; the conveyance was made in pursuance of that arrangement and finally completed in March, 1872; I was married in June, 1871; the conveyance was deferred because my present wife objected to it previous to our marriage, and it was finally accepted soon after the birth of an heir."

The defendant Mary C. Walker testified as follows: "I had known Mr. Walker about two years before our marriage; he first proposed marriage to me in 1870; he told me when he made the offer of marriage that he would give me a considerable marriage settlement; he did not designate any special property for some months afterwards."

*Interrogatory.* State how often, if at all, the subject was subsequently talked of between you prior to February, 1871, and whether any particular property, and, if any, what property was agreed upon as the subject of the marriage settlement?

*Answer.* His Iowa interests, and once in walking along the bluffs he pointed out to me that my lots around the B. & M. depot would be very valuable some time; it was talked of very frequently prior to February, 1871.

*Inter.* State the facts as to whether the arrangement for a

marriage settlement was or was not ever evidenced by writing and if it was, what was the nature of the writing, whether letters, or other memoranda or formal agreement?

*Ans.* It was; he wrote to me in February, 1871; I think the letter has been burned; I have looked and searched among all the papers I have, and I burned some letters in 1874, never anticipating I would ever have any use for them again; I remember some parts of it distinctly; he wrote requesting me to accept a conveyance of his Iowa real estate, and that he was ill and traveled a great deal, was subject to accident, and might die a little earlier than he expected, and I suppose was a little complimentary—that he thought more of me than anybody else, and preferred my having it to his family; he referred to the fact that we had talked about this before and agreed to it, and that there would be no impropriety which you no doubt would suggest there would be, and let him be the judge in the matter. I could not repeat every word that was said. Mr. Walker remarked several times that my home was the only home he had known for some time, and that his relatives didn't care very much for him only what they could get from him, and that my coming into the camp had disappointed them and made them angry, or something of that kind. The letter I have spoken of was signed by Thomas A. Walker, now my husband; it was dated at St. Louis, Mo., and received here at Council Bluffs in February, 1871, I can't remember just the day; I replied to the letter a few days after; the answer was addressed to Thomas A. Walker, St. Louis, Mo.; I assisted in searching for that letter and think it was burned in 1874; the search was made among our papers at home.

I remember my answer in regard to the conveyance of the Iowa property, which I requested him to defer until we were married; that I thought it would be very improper, and that if he died before we were married, I didn't want his property.

*Inter.* You will now please state whether the proposition and agreement which you have stated for the conveyance of Mr. Walker's Iowa property to you as a marriage settlement still remained in force up to the date of the marriage and was an existing inducement to the marriage.

*Ans.* It remained in force up to the time we were married. I believe it was generally supposed that I was marrying him for his money, but I think my course through life would suggest otherwise.

*Inter.* State the fact as to whether the conveyance of Mr. Walker's Iowa property was ever made to you in pursuance of that agreement, and, if so, when such conveyance was made.

*Ans.* It was; and the conveyance was not made until March, 1872.

Mary B. Williams, the mother of the defendant Mary C. Walker, testified as follows:

*Inter.* State the fact as to whether you ever saw a letter signed by said Thomas A. Walker, and written at St. Louis, Mo., in the month of February, 1871, relating to an agreement to make a marriage settlement upon your daughter, Mary C. Williams, now Mary C. Walker?

*Ans.* I did see such a letter; I read that letter; I do not remember the contents fully, but remember portions of it. The portion that I remember is in substance that he desired to settle on my daughter property that he owned in Iowa; it was property that he designed to give my daughter as a marriage settlement, because at that time he was unwell and feared that something might occur by which he would leave her unprovided for in case of his death. This is the substance of the letter. The reason I recollect it is, the letter was placed in my hands for the purpose of obtaining my advice in relation to the acceptance of it by my daughter; the letter was replied to by my daughter, and I either read the reply or it was read to me by my daughter, I cannot recollect which; I recollect the contents of the reply; the substance of it in reference to his letter was, that she preferred that he would not make the settlement until after their marriage, as near as I remember. That reply was signed by Mary C. Williams.

The conveyance by Mr. Walker to my daughter was not dependent upon any such condition as the birth of an heir, and my daughter did not refuse and decline to accept the conveyance in her reply, but requested that it be deferred until after their marriage.

All the foregoing evidence was objected to as incompetent to establish a contract made in consideration of marriage. Section 3663 of the Code provides "that no evidence of such contracts is competent unless it is in writing, and signed by the party charged or by his lawfully authorized agent." Counsel for appellant strenuously contends that the writing itself is the only proper evidence, and that no parol evidence of its contents can be received, even where it is shown that the writing has been lost or destroyed. If it were necessary to determine that question in the case at bar, we feel constrained to say that it would be attended with no little difficulty. The argument of counsel in favor of such a construction is forcible, and there are strong grounds upon which such a ruling could be placed. But conceding that the contents of the letters in question was properly allowed to be proven by parol, we are of the opinion that when the foregoing evidence is divested of oral conversations between the parties, and the construction placed upon the letters by the witnesses, it does not show a binding contract in writing between the parties. It is difficult to ascertain from the evidence of the parties what the contents of the letters was. True, they give their construction of the contents, but that is incompetent. The contract cannot be partly in writing and partly by parol. It must be shown to have been in writing signed by the party to be charged. The statute in question was enacted to prevent frauds and perjuries, and if it be competent to show the contents of the lost writing the evidence should be clear that the writing itself contains a binding contract in and of itself.

Where, as in the case at bar, it is sought to establish such a contract by proof of the contents of lost letters, the 1. EVIDECE: statute of frauds: ante-nuptial agreement. parol evidence should show that the letter addressed to Mary C. Williams, by Walker, was a distinct proposition that in consideration of their marriage he would convey said real estate to her, and the reply thereto should be shown to be an acceptance of the proposition in as broad and distinct terms as it was made. We undertake to say that not one of the witnesses in this case attempted to give the language of either of the letters, nor any of

the language contained in them. The most that can be claimed for the evidence is that the witnesses gave their opinions of the meaning of the language used in the letters. This is not sufficient. The contents should be given so that the court might be enabled to judge therefrom whether there was a contract in writing.

II. We are next to determine whether the conveyances in question were fraudulent as to the plaintiff, she having been an existing creditor of Thomas A. Walker. It is claimed in the answer that the plaintiff's claim was, at the time the conveyances were made, fully secured by a mortgage upon the property purchased by Walker of the guardians of the plaintiff. This allegation is not supported by the evidence. It is shown conclusively by the testimony of competent witnesses that the value of the property at the time the alleged fraudulent conveyances were made did not exceed eight thousand dollars, and that it has depreciated in value since that time.

*2. FRAUDULENT conveyance: facts considered.*

One of the conveyances made to Mary C. Walker expresses a consideration of fifty dollars, and the other one hundred dollars. The value of the real estate conveyed is variously estimated by the witnesses at from sixty thousand to one hundred thousand dollars. It is not claimed that the expressed consideration was actually paid. The conveyances, therefore, were what the law deems voluntary, that is, a conveyance without any valuable consideration. That Walker had the right to convey this property to his wife can only be questioned by his creditors. As between the parties themselves and all persons claiming under them, voluntary conveyances are binding. But, in so far as they have the effect to delay, hinder, or defraud creditors they are void to the extent to which it may be necessary to deal with the property to their satisfaction. Kerr on Fraud and Mistake, 199, and cases cited.

That Walker was largely indebted at the time these conveyances were made is not disputed. His counsel concedes such indebtedness in the amount of $151,500. The burden of proof, therefore, is upon the defendants, to establish facts which will repel the presumption of a fraudulent intent.

" The transfer stands condemned as fraudulent, unless the facts which may give it validity are proved by them (the defendants)." Bump on Fraudulent Conveyances, 269. The defendants sought to prove that Thomas A. Walker, at the time of the conveyances, was in prosperous circumstances; that he was the owner of a large amount of real estate in the city of St. Louis, which was in value largely in excess of his indebtedness, and that after the conveyances in question were made he was possessed of ample means to discharge all of his indebtedness. It is true that defendant held title to real estate which was of apparently more than sufficient value to discharge all his debts. That is, certain witnesses, including Thomas A. Walker, testify to the value of the several parcels of real estate in St. Louis, in the year 1872, and their aggregate valuation is largely in excess of the debts owing by him. But, notwithstanding the evidence of values, we think the existing and subsequent events shown in evidence establish, beyond question, that these conveyances operated to hinder and delay creditors, and especially the plaintiff, for these reasons: 1st. The plaintiff's claim was an Iowa debt, and the deeds in question conveyed all of Walker's Iowa property to his wife, thus making it necessary for the plaintiff to collect her debt in another state. 2nd. A very large part of the St. Louis property was heavily incumbered by trust deeds, which it would be necessary for the general creditors to pay off or redeem, in order to collect their claims. 3rd. We are unable to find from the evidence that the defendant has now any property in St. Louis or elsewhere, which may be applied in satisfaction of the debt due to the plaintiff. As near as can be determined from the evidence, all the property either has been exhausted, or is in the process of exhaustion, in the payment of indebtedness which existed prior to the date of the conveyance in question. This fact shows that the valuation placed upon the property by the defendant and his witnesses was a mistaken valuation, or that there has since been such a depreciation in the values as not to leave sufficient for the payment of the debts. There is no showing that Walker has, since the conveyances were made,

met with any losses by fire or flood, or the like, or that he has even lost by speculation or trade, or that he has incurred any new indebtedness. All that appears from the evidence is that there has been a great depreciation in the value of real estate in the city of St. Louis, as there has been in all parts of the country. But this is a contingency which should have been taken into account by the defendant. The "gift will be valid although the property may ultimately turn out to be inadequate, if this is occasioned by some accident which human forethought could not guard against, as by losses in trade, or by fire, or by storms. The ordinary fluctuations in the value of property, however, occasioned by the condition of mercantile affairs, cannot be ranked among casualties. These fluctuations are constantly taking place, and men must calculate upon, and be prepared for them." Bump on Fraudulent Conveyances, 286.

From the foregoing considerations we are united in the opinion that these conveyances cannot be sustained as against the plaintiff's claim. In other words, the presumption of fraud arising from the voluntary conveyance and indebtedness has not been rebutted in that full, clear, and satisfactory manner which is required in cases of this character.

REVERSED.