[No. 13177.   Department Two. — June 26, 1891.]

MURDOCK NICHOLSON, RESPONDENT, v. WINIFRED C. TARPEY ET AL., APPELLANTS.

SPECIFIC PERFORMANCE — CONVEYANCE OF PORTION OF PREMISES SOLD — RETENTION OF CONTRACT BY GRANTOR — REFORMATION OF DEED. — An action by a grantee for the specific performance of a written contract for the conveyance of real estate, alleged to have been retained by the grantor of the land when he executed a deed for a portion of the premises described in the contract, which he had induced the plaintiff to accept as conveying the whole land contracted for, is, in effect, an action to reform the deed.

ID. — EVIDENCE — NEGOTIATIONS PRECEDING CONTRACT. — In such action, evidence as to the negotiations and conversations preceding the execution of the written contract is inadmissible.

DEPOSITIONS, EXCEPTIONS TO. — Depositions are taken subject to all legal exceptions, except as to the form of the interrogatory; and when read upon a retrial of an action, the parties are at liberty to interpose new objections.

ID. — LOST WRITING — TERMS OF CONTRACT — INTENTION OF PARTIES. — The rights of the parties to a written contract must be ascertained

from its terms; and whether the writing be lost or not, evidence of the intention of the parties in making it is inadmissible, in the absence of fraud or mistake.

APPEAL from a judgment of the Superior Court of Monterey County, and from an order denying a new trial.

The facts are stated in the opinion.

*D. M. Delmas*, for Appellants.

The trial court erred in admitting incompetent evidence of the contents of the alleged agreement in writing, which constituted the basis of plaintiff's claim, as the settled rule is, that when a contract has been reduced to writing, it is understood as expressing the final conclusion of the contracting parties, and fully accepted as merging all prior negotiations and understandings, whether agreeing or inconsistent with it. (Civ. Code, secs. 1625, 1639, 1856; 1 Greenl. Ev., sec. 275; *Goldman v. Davis*, 23 Cal. 256, 277; *Rearick v. Rearick*, 15 Pa. St. 72; *United States v. Britton*, 2 Mason, 464; *Dennis v. Barber*, 6 Serg. & R. 426; *Tayloe v. Riggs*, 1 Pet. 591; *Vincent v. Cole*, 1 Moody & M. 258; *Mariner v. Saunders*, 10 Ill. 122; *Moffitt v. Maness*, 102 N. C. 457; *Metcalf v. Van Benthuysen*, 3 N. Y. 430; *Rankin v. Crow*, 19 Ill. 630.)

*Julius Lee*, and *King, Rogers & Lindley*, for Respondent.

The former decision of this court has become the law of the case, and as the court then held that the deposition in dispute was admissible in evidence in the first trial, it was admissible at the second trial, notwithstanding the objections to some specific portions of it were somewhat different from what they were at the first trial. (See *Nicholson v. Tarpey*, 70 Cal. 608.)

TEMPLE, C. — This is the defendant's second appeal. (70 Cal. 608.) It is from the judgment, and an order

refusing them a new trial upon a bill of exceptions, wherein are stated certain rulings admitting evidence against the defendants, claimed to be erroneous.

The action is for the specific performance of a contract alleged to have been made in writing by Mathew Tarpey, the ancestor of the defendants. It is charged that Tarpey induced plaintiff, by fraudulent representations, to accept a deed for a portion of the premises, under the belief that it conveyed the whole. This action is, in effect, to reform the deed.

Defendants admit a parol contract for the premises conveyed by Tarpey, and deny that any other contract was made. The plaintiff claimed that the contract was executed in duplicate, each party retaining one, and that his copy was surrendered to Tarpey and destroyed when he received the deed.

The issue tried was, whether there was a written contract, and if so, as to its contents.

The alleged contract was in May, 1867. The deed was delivered and received as performance in October, 1868. Plaintiff built a house and went upon the land to live in 1871, and claims to have had possession of the whole tract ever since. The tract comprised about four hundred acres, was evidently, much of it, unsuitable for cultivation, and was not inclosed. It does not appear whether there was any improvement or cultivation upon the part now in dispute. Mathew Tarpey died in 1873. The line between the part agreed to be conveyed and that retained was not fenced until 1879, — shortly before the commencement of this litigation.

The testimony objected to is the same deposition, some objections to which were considered on the last appeal, and respondent claims that that decision has become the law of the case.

To this it is sufficient to reply that the objections are not the same. Depositions are taken subject to all legal exceptions, except as to the form of the interrogatory,

and when read on the retrial, parties were at liberty to interpose new objections.

The witness, having stated that plaintiff and Tarpey went to look at the land while negotiations were in progress, was asked: "Did you hear any conversation between them after they returned that day? and if so, state fully what it was."

It was objected to as irrelevant, immaterial, and incompetent, and that negotiations and conversations preceding the execution of the written contract were merged in it, and that it did not purport to call for the contents of the writing. Plaintiff's counsel then stated that they desired to prove by it the contents of the bond, which was in the possession of the defendants, and beyond their control, and promised to account for its non-production. The objections were renewed and overruled, defendants excepting.

The witness then proceeded to detail the conversation between Tarpey and plaintiff, in response to numerous direct questions explicitly calling for such testimony, all of which were duly objected to and exceptions reserved. For example, that Nicholson said he was to pay fifteen hundred dollars, in wagons, etc.; "that he bought this piece of land from Mr. Tarpey, — running from a certain corner of the San Juan road, corners with Juan Anser; running down San Juan road to a picket fence; thence up to Castro line, corner of Castro; thence cross to the three stakes; thence back to beginning, — *being the land in dispute*, — for fifteen hundred dollars"; that Tarpey said there was wood enough on it to pay for it; that the spring was included; and was worth more than all the ranches around there, etc.

This evidence was offered and received expressly to prove the contents of the writing, which the witness stated was made at that time, and was all composed of remarks previous to, or at best contemporaneous with, the execution of the writing. It was clearly incompetent.

The question on the former appeal was, apparently, whether, when the deposition was read, the loss of the original had been sufficiently proven. The court evidently misapprehended the facts of the case. It seems to have supposed that Mathew Tarpey was the defendant, and had in his possession a duplicate of the writing. He had been dead about seven years before the action was commenced. There is no evidence which tends to show that the bond was ever in the possession of the defendants, who are the heirs of Mathew Tarpey. Apparently, too, the court overlooked section 1855 of the Code of Civil Procedure, which expressly requires reasonable notice to a party before his failure to produce the writing will justify oral testimony of its contents.

In *Goldman* v. *Davis*, 23 Cal. 256, this court said: " The law deems all such stipulations merged in the writing, which, in the absence of fraud, accident, or mistake, is treated as the exclusive medium of ascertaining the agreement to which the parties bound themselves." To the same effect is section 1625 of the Civil Code. There is no claim of mistake or fraud in regard to the written agreement. It is assumed that it correctly stated the contract. The final agreement may have differed widely from propositions made during negotiations.

The parties may both have been mistaken in regard to whether the agreed boundaries would include the spring. By-standers were quite likely to have misunderstood the agreement. The material question was as to the language of the written contract. The final agreement and negotiations preceding it throw a very uncertain light upon that issue. Whether lost or not, there can be no evidence, in the absence of mistake or fraud, of the intention of the parties, other than the written instrument itself. The rights of the parties must be ascertained from its terms. (Code Civ. Proc., sec. 1856.)

The code expressly provides, in case of lost instruments, for oral evidence of its *contents*. (Code Civ. Proc., secs. 1855, 1870, subd. 14.)

Evidence of the character received in this case imposes upon the court the construction of the contract by the witness. In *United States* v. *Britton,* 2 Mason, 464, Mr. Justice Story remarked: "If no such copy exists, the contents may be proved by parol evidence, by witnesses who have seen and read it, and can speak pointedly and clearly to its tenor and contents."

The precise question was decided in *Tayloe* v. *Riggs,* 1 Pet. 591. Chief Justice Marshall said: "This not being an action for deceit and imposition, but on a written contract, the right of the plaintiff to recover is measured precisely by that contract, and the secondary evidence must prove it as laid in the declaration. The conversation which preceded the agreement forms no part of it, nor are the propositions or representations which were made at the time, but not introduced into the written contract, to be taken into view in construing the instrument itself. Had the written paper been produced, neither party could have been permitted to show his inducements to make it, or to substitute his understanding of it for the agreement itself. If he was drawn into it by misrepresentation, that circumstance might furnish him with a different action, but cannot affect this. . . . . When a written contract is to be proved, not by itself, but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; and if that cannot be done, the party is in the condition of every other suitor in court who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired if they

could be established upon uncertain and vague impressions made by a conversation antecedent to the reduction of the agreement." (See also *Vincent* v. *Cole*, 1 Moody & M. 258; *Dennis* v. *Barber*, 6 Serg. & R. 426.)

We think the judgment and order should be reversed, and a new trial ordered.

BELCHER, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and a new trial ordered.

Hearing in Bank denied.