CAPELL ET AL., APPELLANTS, *v.* FAGAN, RESPONDENT.

(No. 1,900.)

(Submitted May 26, 1904.  Decided June 17, 1904.)

## *Lost Instruments—Proof—Sufficiency.*

1.  Under the provisions of the Code of Civil Procedure, in order to establish the former existence  of an instrument in writing, under which plaintiff claims, he is compelled to prove its execution and contents, including all the substantial parts of the lost instrument, to such an extent as to constitute a practical reproduction of the instrument in all of its substantial parts.
2.  Proof of negotiations, conversations and acts of parties before, at the time of and after the execution of a written instrument, are not competent to prove its contents where the instrument is lost.
3.  Where a written contract is to be proved by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself, but the substance of the agreement must be proved satisfactorily.
4.  While, under the statutes, the consideration need not be mentioned in a deed, yet, if it is mentioned and set forth in the deed, it becomes a substantial part of the contents thereof, and must be proven like any other of the contents on loss thereof.
5.  In an action to recover a portion of a mining claim, in which plaintiffs claimed under a deed which had been destroyed, evidence considered, and *held* not to show the contents of the deed by such direct and positive evidence as to enable the court to say that there was a conveyance.

*Appeal from, District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by Carl J. Capell and others against Joseph B. Fagan.  From a judgment for defendant, and from an order overruling a motion for a new trial, plaintiffs appeal.  Affirmed.

*Messrs. McBride & McBride,* and *Mr. James E. Murray,* for Appellants.

"A complaint which alleges that plaintiff was the owner of and in possession of certain land, and that defendant claims an estate or interest therein, but has none, states a cause of action." (*Rough* v. *Simmons,* 65 Cal. 227; *Johnson* v. *Vance,* 86 Cal. 129, A. C. 24 Pac. 863.)

"The allegation that plaintiff is the owner of land is in substance an allegation of *seizin in fee* in ordinary instead of technical language." (*Garwood v. Hastings,* 38 Cal. 216.)

In the case at bar defendant in his answer alleged that plaintiff had no claim to the property in controversy other than a verbal agreement for a deed. Plaintiff, replying, alleged the execution and delivery of a deed. Defendant on the trial testified that this allegation of his answer was wrong; that he had made and delivered to plaintiff a deed. Such a state of facts certainly establishes the existence and delivery of some kind of a deed. "Words are the common signs that mankind make use of to declare their intentions to one another, and when the words of a man express his meaning plainly, distinctly, perfectly, there is no occasion to have recourse to any other means of interpretation." (29 Am. & Eng. Ency. p. 849.)

"Words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the party in their technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (Civil Code, Sec. 2209.)

"As the term is commonly used, a deed may be defined as 'a writing under seal by which lands, tenements or hereditaments are conveyed for an estate not less than a freehold.'" (Devlin on Deeds, Sec. 5, p. 7, citing Sharswood's Blackstone's Commentaries, Vol. 2, p. 294.)

There is absolutely no doubt that the deeds that the said witnesses were testifying concerning were not leases or mortgages, but were deeds of conveyance, whereby the entire title to the portion of the Josephine lode referred to was to be and was conveyed by Fagan to Farley. The court in the case of *Sanders v. Reidinger,* 51 N. Y. Sup. 942, held that testimony that a deed had been signed and delivered was proof of a conveyance of the fee.

If a party of mature years and sound mind, being able to read and write, without any imposition or artifice to throw him off his guard, deliberately signs a written agreement, without

informing himself as to the nature of its contents, he will, nevertheless, be bound, for in such case the law will not permit him to allege, as a matter of defense, his ignorance of what it was his duty to know, nor will a court of equity assist him to avoid the consequences of his negligence. (*Walton Guano Co.* v. *Copelan,* 112 Ga. 319, s. c. 52 L. R. A. 268; *Gulliher* v. *Chicago Railroad Co.,* 59 Iowa, 416, s. c. 13 N. W. 429; *McKinney* v. *Herrick,* 66 Iowa, 414, 23 N. W. 767; *Minneapolis Ry. Co.* v. *Cox,* 76 Iowa, 306, 41 N. W. 24; *Rice* v. *Dwight Mfg. Co.,* 2d Cush. Mass. 80; *Hazard* v. *Griswold,* 21 Fed. 178; *Day* v. *Raguet,* 14 Minn. 273; *Taylor* v. *Fleckenstein,* 30 Fed. 99; *Mateer* v. *Missouri Pacific Ry. Co.,* 105 Mo. 320, 16 S. W. 839; *Breese* v. *U. S. Telegraph Co.,* 48 N. Y. 132. See, also, *Roote* v. *Zaller,* 2 N. Y. Sup. 742; *Little* v. *Little,* 2 N. D. 175, s. c. 49 N. W. 736; *Sanger* v. *Dun,* 47 Wis. 615; s. c. 32 Am. Rep. 789; *McKay* v. *Jackman,* 17 Fed. 641; *Lumley* v. *Wabash Ry. Co.,* 71 Fed. 21; *Royston* v. *Miller,* 76 Fed. 50; *Reid* v. *Bradley,* 105 Iowa, 220; s. c. 74 N. W. 896; s. c. 20 A. and E. Ency. 832; *Kennerty* v. *Etiwan Phosphate Co.,* 21 s. c. 226; s. c. 53 Am. Rep. 669; *Snelgrove* v. *Earl,* 17 Utah, 321; s. c. 53 Pac. 1019; *Dyar* v. *Walton,* 79 Ga. 466; s. c. 7 S. E. 220; *Bostwick* v. *Duncan,* 60 Ga. 383.)

*Mr. W. A. Pennington,* for Respondent.

An instrument without operative or granting words cannot operate, grant, sell or convey. It is without life, force or effect. It does nothing, admits having done nothing, and promises to do nothing. It does not convey, admit having conveyed nor promise to convey. It is a nullity. (*Metcalf* v. *Van Benthuysen,* 3 Comstock N. Y. 424; Sec. 803, Tiedieman on Real Property; 9 Am. and Eng. Ency. Law, pp 93, 94, 138.)

The mere designating an instrument a deed, even by a person competent to decide what constitutes a deed, does not show its legal fact, as the term is a broad one and comprehends every possible conveyance of any right, title or interest in real or personal property by a written instrument. (Century Diction-

ary; Anderson's Dictionary of Law; Sec. 5, Vol. 1, Devlin on Deeds.)

We contend that appellants have not proved a deed of conveyance, and that it is not sufficient to merely designate a lost paper by the term deed, and to offer evidence as to some of the parts of the deed and omit any reference whatever to other parts essential to constitute a deed, and we cite the following authorities in support of our contention: Code of Civil Procedure, Par. 3228; Code of Civil Procedure, Par. 3146, Subd. 14; Rice on Evidence, Vol. 2, p. 1010; Jones on Evidence, Vol. 1, Sec. 228; *Tayloe* v. *Riggs,* 1 Peters, 591, 26 U. S. 589; *Renner* v. *The Bank of Columbia,* 9 Wheat. 581, 22 U. S. 580; *Tisdale* v. *Tisdale,* 64 Am. Dec. 775 (2 Sneed 596); *Metcalf* v. *Van Benthuysen,* 3 Comstock, N. Y. 424; *Edward* v. *Noyes et al.,* 65 N. Y. 125; *McDonald* v. *Thompson,* 26 Pac. 146 (Colo.); *Rhodes et al.* v. *Vinsen et al.,* 52 Am. Dec. 685 (9 Gill); *Butler* v. *Butler,* 5 Harr. (Del.) 178; *Davis* v. *Sigourney,* 8 Metc. (Mass.) 487; *Wallis* v. *Wallis,* 114 Mass. 510.

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

Appeal by plaintiffs from a judgment against them and from an order overruling their motion for a new trial.

The action was instituted to quiet the title to an undivided one-fourth interest in the Josephine quartz lode mining claim. Plaintiffs claim ownership and possession of the property in controversy. Defendant claims ownership and right of possession of an undivided one-half of the premises, admitting that plaintiffs are entitled to the other half, and that each are entitled to an undivided one-eighth of the entire claim. Concededly, the entire one-fourth interest in question formerly belonged to defendant, and plaintiffs contend that it was conveyed to one Farley, their predecessor in interest, by defendant in February, 1898, by a deed which was not acknowledged so as to entitle it to record, and that the deed was afterward destroyed by fire. The defendant, on the other hand, contends that he agreed to

convey only an undivided one-eighth—or one-half of the one-fourth—to Farley, and that he retained, and still held and owned, the other undivided one-eighth. Both parties agree that an instrument in writing was drawn by one Harry Lynch in his saloon in Butte, and plaintiffs contend that by this instrument the full one-fourth was conveyed to Farley. There can be no doubt but that a written instrument was drawn by Lynch, which was executed by defendant, and delivered to Farley in February, 1898. Appellants have alleged their source of title as being by this written instrument. The burden, therefore, was upon them to establish the title alleged. This written instrument was not recorded, because it was never acknowledged by the grantor, and, it having been destroyed by fire, appellants attempted to establish its former existence and contents by parol evidence.

The provisions of our Code of Civil Procedure relative to such proof are as follows: Section 3106. "Primary evidence is that kind of evidence which, under every possible circumstance, affords the greatest certainty of the fact in question. Thus, a written instrument is itself the best possible evidence of its existence and contents." Section 3107. "Secondary evidence is that which is inferior to primary. Thus, a copy of an instrument or oral evidence of its contents, is secondary evidence of the instrument and contents." Section 3131. "There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases: (1) Where the original has been lost or destroyed; in which case the proof of the loss or destruction must first be made. * * * In the cases mentioned in Subdivisions 3 and 4, a copy of the original or of the record must be produced; in those mentioned in Subdivisions 1 and 2, either a copy or oral evidence of the contents." Section 3132. "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents

of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the pleadings. (2) Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in Section 3136, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term 'agreement' includes deeds and wills, as well as contracts between parties." Section 3146: "In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: * * * (14) The contents of a writing, when oral evidence thereof is admissible." Section 3228: "The original writing must be produced and proved, except as provided in this part. If it has been lost, proof of the loss must first be made before evidence can be given of its contents. Upon such proof being made, together with proof of the due execution of the writing, its contents may be proved by a copy, or by a recital of its contents, in some authentic document, or by the recollection of a witness, as hereinbefore provided."

It is apparent from these provisions that, in order to establish the former existence of this instrument in writing, appellants were compelled to prove its execution and contents. The rights of the parties in this controversy rested upon this written instrument, and could only be settled by the application of its terms to the questions in controversy. Its terms could not be so applied until its contents were established. The word "contents," used in this statute, evidently includes all the substantial parts of the lost instrument, and therefore proof of such contents requires a practical reproduction of the instrument in all of its substantial parts.

The law is well settled that proof of the negotiations and conversations and acts of the parties before, at the time of, and after the execution of a written instrument are not competent to prove its contents, where the instrument is lost. (*Nicholson v. Tarpey,* 89 Cal. 617, 26 Pac. 1101; *Nicholson* v. *Tarpey,* 124 Cal. 442, 57 Pac. 457; *Tayloe* v. *Riggs,* 1 Pet. 591, 7 L.

Ed. 275; *Kimball* v. *Morrell*, 4 Me. 368; *Richardson* v. *Robbins*, 124 Mass. 105.) The greater part of the record is composed of this class of testimony, and under the above authorities cannot be considered.

It being conceded that some sort of paper was executed and delivered to the plaintiffs' predecessor in interest, and has been destroyed by fire, the only question for our consideration is, did appellants satisfactorily prove its contents by competent testimony?

The following rule as to proof of the contents of a lost instrument was announced by the Supreme Court of the United States at an early date, and has been generally followed by our courts of last resort since that time: "When a written contract is to be proved, not by itself, but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; and, if that cannot be done, the party is in the condition of every other suitor in court who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired if they could be established upon uncertain and vague impressions, made by a conversation antecedent to the reduction of the agreement." (*Tayloe* v. *Riggs*, 1 Pet. 591, 7 L. Ed. 275.)

The Supreme Court of New York, in the case of *Edwards* v. *Noyes*, 65 N. Y. 125, uses the following language: "Parol evidence to establish the contents of a lost deed should be clear and certain. It should show that the deed was properly executed with the formalities required by law, and should show all the contents of the deed, not literally, but substantially. If anything less than these requirements would suffice, evil practices, which it was the object of the statute of frauds to prevent, would be encouraged. * * * . As to lot 108, the plaintiff attempted to show that one Rodgers conveyed it to him by a deed

which was lost in 1835. He had no copy of the deed, but attempted to prove its contents by witnesses who had never read it, but who claimed that they had heard it read many years before the trial. They could give but a small fraction of what the deed appeared to contain. On the whole, their evidence was quite unsatisfactory."

The Supreme Court of California, in the case of *Nicholson* v. *Tarpey*, 89 Cal. 617, 26 Pac. 1101, uses the following language: "The material question was as to the language of the written contract. Whether lost or not, there can be no evidence, in the absence of mistake or fraud, of the intention of the parties, other than the written instrument itself. The rights of the parties must be ascertained from its terms. Code Civ. Proc. Sec. 1856. The Code expressly provides, in case of lost instruments, for oral evidence of their *contents*. Code Civ. Proc. Secs. 1855-1870, Subd. 14. Evidence of the character received in this case imposes upon the court the construction of the contract by the witness. In *United States* v. *Britton*, 2 Mason, 464, Fed. Cas. No. 14,650, Justice Story remarked: 'If no such copy exists, the contents may be proved by parol evidence by witnesses who have seen and read it, and can speak pointedly and clearly to its tenor and contents.' "

The Supreme Court of Arkansas, in the case of *Hooper* v. *Chism*, 8 Eng. 496, says: "There is no rule of law that ought, upon the ground of public policy, to be better settled than this; that wherever parties have reduced their contract or agreement to writing, the instrument itself is the best and highest evidence of what the contract or agreement really was. No matter what the conversation or representations on either side that preceded it may have been, they are all supposed to be merged in the written instrument, which is to be regarded as the conclusion agreed upon between them. A contract is the law which the parties have prescribed unto themselves, and the object of reducing it to writing is that a memorial of its terms and provisions may be preserved, and not left to depend, for proof of them, upon the uncertain and imperfect recollection of witnesses. No man's

rights would be safe, and no prudence could guard against fraud, if this were not the law; and the exceptions to it—which ought to be admitted with great caution—are more apparent than real. The rule rests upon the supposition that there is a written contract, as in the case now before the court is conceded by both parties. * * * When a party is allowed to establish the contents of a lost instrument, he must at least show with reasonable certainty what its terms and provisions were. Without making any question as to grades of secondary evidence, if no copy of the instrument exists, and parol testimony is offered, it ought to be that of a witness who has seen or read the instrument, or is otherwise enabled to speak with some degree of accuracy as to its contents, and identify it as the one executed by the party to be charged where that is disputed. Else a party relying upon a lost instrument would often be placed in a better position to take the chances of parol testimony, and the temptation would be held out to him to destroy or suppress it." The court then quotes the language of Chief Justice Marshall in *Tayloe* v. *Riggs*, 1 Pet. 600, 7 L. Ed. 275.

The Supreme Court of Illinois, in the case of *Rankin* v. *Crow*, 19 Ill. 626, says, in regard to testimony proving the contents of a lost deed: "Fort testifies he was present when it was made; that it was read over by Jamison; that the consideration was $110; that it was for the land in dispute; but whether it was a warranty or quitclaim deed he does not know. He professes to give no part of its contents, or even its terms, except that it was a deed for this land from Gibson to Dunn. To prove the contents of a written instrument, the vague recollections of witnesses are not sufficient to supply its place. The substance of the contract ought to be proved satisfactorily, and, if that cannot be done, the party is in the condition of every other suitor in court who has no witnesses to support his claim. When the parties reduce their contract to writing, the obligation and duties of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired if they could be established upon uncertain and vague impressions of witnesses."

The following cases may also be examined upon the question as to the character of proof required in cases of proof of the contents of lost instruments: *Metcalf* v. *Van Benthuysen,* 3 N. Y. 424; *Madeira's Heirs* v. *Hopkins,* 12 B. Mon. 595; *Elwell* v. *Walker,* 52 Iowa, 256, 3 N. W. 64; *Loftin* v. *Loftin,* 96 N. C. 94, 1 S. E. 837; *Kimball* v. *Morrell,* 4 Me. 386; *United States* v. *Britton,* 2 Mason, 464, Fed. Cas. No. 14,650; *Edwards* v. *Rives,* 35 Fla. 89, 17 South. 416; *Tisdale* v. *Tisdale,* 2 Sneed, 596, 64 Am. Dec. 775.

Testing the testimony offered by plaintiff in this case by the rules announced in the foregoing decisions, we must conclude that the substantial contents of the lost instrument were not proved by such clear and satisfactory evidence as is required by these rules, and that the court did not err in finding that there had been made no deed proven in the case. We find on investigation of the record that the only direct and positive testimony offered by appellant as to the contents of the instrument were the names of the parties and a description of an undivided one-fourth interest in the Josepine lode mining claim. Only two witnesses were examined as to the contents of the instrument, viz., Farley, the grantor, and Lynch, the person who drew it. Both of these witnesses testified to its execution and delivery, gave the names of the parties thereto, and stated the description of the land mentioned in it. They further stated that it was drawn by Lynch at the request of Farley and Fagan. That there was presented to Mr. Lynch a blank form of deed, and an old deed conveying the property in question to defendant Fagan; that Lynch filled up all the blanks in the form of deed presented, and inserted the description. Farley says nothing concerning any of the contents except the description, the names of the parties and the consideration. As to the consideration he says: "The consideration, if I remember right, named in the new deed, was one dollar." Lynch says: "The blank which was brought to me by Mr. Fagan and Mr. Farley was a regular form of deed, but as to details I have forgotten it. The consideration was filled up. I cannot say whether or not there

was a consideration named in the deed, but I think there was. My recollection is that it was one dollar. I cannot state positively that the consideration was put in the deed. I cannot state at this time, but I think that it was."

While, under the statutes, the consideration need not be mentioned in a deed, yet if it is mentioned and set forth in the deed, it becomes a part of the contents of such deed, and must be proven like any other of the contents thereof. The testimony as to the consideration named in the instrument is uncertain and equivocal. There is no testimony disclosed in the record as to any of the remaining contents of the instrument in question. There is nothing to show the character of the paper— if a conveyance, whether it was a bargain and sale, warranty, or mere quitclaim deed—or to disclose the character of the title. There are no granting words proven. So far as the proof disclosed in the record, the paper simply consisted of the names of the parties grantor and grantee, and a description of the premises. All the remaining contents are left entirely to presumption.

An instrument cannot be given the effect of a conveyance unless it contains words of grant. The mere use of the word "deed" by witnesses is a mere conclusion of the witnesses, and it cannot be presumed that the written instrument in this case was a deed of conveyance, at least without proof that it contained sufficient words of grant.

Again, witness Lynch was asked upon cross-examination whether or not he did not, on the 31st day of May, 1900, at the city of Butte, state to Fagan and his attorney, Walsh, in the presence of both of them, that he had forgotten all about the transaction; that the whole matter had passed out of his recollection; that he did not know what was the consideration, or what interest was named in the paper; and that they were trying to give Fagan the worst of it, and he would be very glad to help him if he could. Lynch denied having such a conversation, but both defendant Fagan and his attorney testified positively and directly that such conversation was had. Aside from

the inherent improbability that Lynch, who was keeping a saloon, and not in the business of preparing conveyances, could remember for over two years the contents of a paper which he "filled in," having testified to no particular attendant circumstances which would have had a tendency to fix the facts in his mind, we have the positive testimony of two witnesses that he afterwards stated to them he had forgotten all about what the contents of the instrument were.

We are of the opinion that appellants' testimony, as disclosed by the record, did not so show the contents of the written instrument by such direct and positive evidence as to enable the court below or this court to say that it was a conveyance of the one-fourth interest in the Josephine lode mining claim.

It follows from this that the decree of the court, and the order appealed from, should be affirmed, and we recommend their affirmance.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are affirmed.

MR. JUSTICE MILBURN was absent at the time of the delivery of this opinion, and takes no part therein.

