CUSTER CON. MINES CO., RESPONDENT, *v.* CITY OF HELENA ET AL., APPELLANTS.

(No. 3,590.)

(Submitted January 8, 1916. Decided February 9, 1916.)

[156 Pac. 1090.]

*Water and Water Rights—Deeds—Loss—Evidence—Recordation — Presumptions — Vendor and Purchaser — Unrecorded Deed—Notice—Appurtenances—Title by Prescription.*

Water Rights—Deeds—Loss—Evidence—Sufficiency.
1.   Evidence in a water right suit *held* sufficient to show the conveyance of the right by deed claimed to have been lost.

Same—Recordation of Deeds—Presumptions.
2.   Under section 4684, Revised Codes, making any unrecorded conveyance void as against subsequent purchasers or encumbrancers, it is presumed that the holder of the prior recorded title acquired the entire estate, unless he had, or was chargeable with, notice.

---

The question of possession of vendee under unrecorded deed as notice of title is discussed in a comprehensive note in 13 L. R. A. (n. s.) 109.

*Same—Vendor and Purchaser—Unrecorded Deed—Constructive Notice.*
3. A use of water for mill and smelter purposes, through a ditch and pipe-line which were prominent, open and visible to any person passing along the ditch, was sufficient to put a purchaser upon notice; the burden of establishing such use being upon the claimant.

*Same—Constructive Notice—Evidence—Sufficiency.*
4. Evidence *held* insufficient to establish constructive notice in defendant city of an unrecorded grant of a portion of a water right made prior to its purchase of the entire right by defendant.

*Same—Possession—Notice of Unrecorded Grant.*
5. Possession of real property or a water right which will amount to notice of an unrecorded grant thereof must be under such grant, unequivocal, inconsistent with the title of the apparent owner of record, and of such a character that an intending purchaser could, by making inquiry, learn of the unrecorded grant.

*Same—Appurtenances—Deed—Burden of Proof.*
6. In order that a deed conveying land with appurtenances may convey a water right, such right must have been appurtenant to the land at the time of the conveyance, and the burden of showing such to have been the fact was upon the grantee.

*Same—Appurtenances—Conveyances.*
7. Where a water right was not granted for any certain purpose or for use on any particular land, it did not become an appurtenance by the terms of the deed, and could not thereafter be conveyed as an appurtenance unless the grantee had given it that character by using it with, and for the benefit of, the land.

*Same—Appurtenances—Conveyance.*
8. Evidence *held* insufficient to show that a water right conveyed by deed was thereafter so used in connection with certain lands as to become appurtenant thereto and pass by mere general deed of the land and its appurtenances.

*Same—Title by Prescription—Evidence—Insufficiency.*
9. Under the rule that, to maintain title to a water right by prescription, the grantee must prove that for ten years the right or some definite portion thereof was in his possession or that of his grantors, and that such possession was open, notorious, exclusive and adverse to the claim of the defendant and under a claim of right, the evidence *held* insufficient to support such a title.

*Same—Who may not Question Right to Lease.*
10. One not asserting any interest in a water right decreed to be owned by defendant city, was in no position to question the right of the city to lease it.

[As to what passes as an appurtenance, see note in 81 **Am. St. Rep.** 765.]

*Appeal from District Court, Broadwater County, Fourteenth Judicial District; Roy E. Ayers, Judge of the Tenth District, presiding.*

ACTION by the Custer Consolidated Mines Company against the City of Helena, in which the Spokane Ranch & Water Company intervened. Judgment for plaintiff and defendant and intervener appeal. Reversed and remanded.

*Messrs. Walsh, Nolan & Scallon, Mr. H. S. Hepner* and *Mr. Lincoln Working,* for Appellants, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

*Mr. R. Lee Word, Messrs. Hartman & Hartman* and *Mr. James A. Walsh,* for Respondent, submitted a brief; *Mr. Walter S. Hartman* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The subject matter of this suit is the right of the respondent to the use and enjoyment of 50 inches of the waters of Beaver creek, Broadwater county, this state, as of date October 1, 1865. It was found and decreed by the district court that the respondent has such right subject to certain prior rights of the appellant city of Helena, but superior to certain other rights of said city to such waters. The question presented upon this appeal is whether the record justifies this award to the respondent.

The respondent asserts as the basis of its claim that it is now, and for many years last past it and its grantors have been, the owners and in possession of the "H. & H." and "Custer" mines, with mill sites and other real estate situate in the valley of Beaver creek, for which water is needed for irrigation, domestic, and mining purposes; that on October 1, 1865, the Murray Placer Mining Company made due appropriation of 1,000 inches of the waters of said Beaver creek for placer mining and other beneficial purposes; that in 1881 said appropriators were desirous of crossing the lands now owned by the respondent, with a ditch known as the Indian creek ditch, for the purpose of carrying the waters so appropriated to certain places of intended use, and in consideration of permission so to do given by James H. Halford and George W. Cleveland, then the owners of said premises, sold and conveyed to such owners "a perpetual right to use and of the use and enjoyment of 50 inches of the waters of said Beaver creek so appropriated as aforesaid and to be conveyed through the said ditch then in course of construction"; that the ditch was constructed and used

for the purposes intended, and from it Halford and Cleveland took and used the 50 inches of water so conveyed to them "for irrigation on part of the lands aforesaid, for domestic purposes, for the use of stock, and for other beneficial purposes," so that the said water became appurtenant to said lands; that said lands and water right have by mesne conveyances become vested in respondent; that since 1881 the respondent and its predecessors in interest have continuously used said 50 inches of water for irrigation, stock, domestic and other useful purposes, which use has been open, notorious, exclusive and adverse as against the city of Helena and its predecessors in interest under a claim of right.

The appellant Spokane Ranch & Water Company is merely a lessee, and its rights are entirely bound up in that of the appellant city of Helena. The latter contests the award to the respondent as unjustified, because: (1) There is not sufficient proof of the alleged conveyance to Cleveland and Halford; (2) if such conveyance was made, it was never recorded, and cannot prevail over the claim of the city as a *bona fide* purchaser; (3) if such conveyance was made, there is not sufficient proof to show that Cleveland and Halford were ever divested of the right so conveyed; (4) neither evidence nor finding warrants any claim of title by prescription.

1. It is conceded in the pleadings that the Indian creek ditch [1] was constructed in 1881 by persons who then held a right as of October 1, 1865, to 1,000 inches of the waters of Beaver creek. These persons are alleged in the complaint to be the predecessors in interest of both the respondent and the city, while the answer admits that they were the predecessors in interest of the city. The evidence on behalf of the respondent tends to show that these persons were John Murray and Joseph McElroy, calling themselves the Murray Placer Mining Company; that the Indian creek ditch crosses the lands of the respondent, which lands were in 1881 the property of James Halford and George W. Cleveland; that Charles S. Muffly, the respondent's managing officer and immediate grantor, saw on

several occasions among the archives of the property—first in 1904—a deed bearing date in the year 1881, written by the hand of John Shober, of Helena, and duly acknowledged, which purported to be executed by the Murray Placer Mining Company, John Murray, and Joseph McElroy, and to "grant, bargain, sell, and convey" to James H. Halford and George W. Cleveland fifty inches of water out of the Indian creek ditch for the consideration of $1 and permission given by Halford and Cleveland to cross the lands with the Indian creek ditch, which deed was never recorded, was abstracted from the archives of the property, and cannot be found; that in 1905 Walter Larson saw in the possession of Mr. Muffly, and read, a deed written in longhand on legal cap paper, which purported to convey fifty inches of Beaver creek water "from the owners of the Indian creek ditch to the owner of the Custer mine," signed by John Murray and another, running to Cleveland and another; that in 1881 John Shober, then a practicing attorney at Helena, drew in longhand, and either witnessed or took the acknowledgment of, a deed executed in his presence, signed by John Murray, Joseph McElroy and perhaps others, as grantors, running to George W. Cleveland, James Halford and perhaps others as grantees, for some right to water from Beaver creek, in consideration of the grantees allowing Murray to cross their lands with a ditch which he was then constructing; that at some time within eleven years after 1881, 1882, or 1883 Isaac Harrington, while cleaning out the Indian creek ditch saw a pipe in the Indian creek ditch at the Custer mines property, and, on reporting that fact to Murray, was told not to disturb it, as Murray had, through a deed written by John Shober, granted fifty inches to the Custer mine, and for him (Harrington) to always respect that right. It is arguable, of course, that these references are not to the same instrument; in which event we have the interesting alternative that more than one grant of the character claimed is suggested. We think, however, that the rational conclusion is that they do relate to one transfer; that the evidence, taken as a whole, meets all the requirements exacted by this court in *Capell*

v. *Fagan,* 30 Mont. 507, 2 Ann. Cas. 37, 77 Pac. 55, and that, if accepted, it justified the finding of a conveyance such as the respondent claims.

2. In our opinion, the pleadings do not permit a question that the city of Helena, by purchase in March, 1901, became vested with the record title to the entire 1,000-inch right above referred to, and out of which the unrecorded grant asserted by the respondent is carved. The conveyances to the city were duly [2] recorded, and at the time of such purchase and recordation there was not anything of record to show that any such grant had been made. Presumptively, therefore, the city acquired the entire right (Rev. Codes, sec. 4684), and such is actually the case unless the city had, or was chargeable with, notice of that grant (Rev. Codes, sec. 4687).

There is no claim of actual notice to the city of the unrecorded grant under which the respondent claims. The plea is that the [3] predecessors of the respondent, immediately after the grant to them of the fifty-inch right, "constructed a ditch and pipe-line tapping said Indian creek ditch, by means of which said 50 inches of water were diverted from said ditch" and conveyed to the lands, mills and concentrators now owned by the respondent; that said ditch and pipe-lines "were prominent, open and visible to any person passing along or in view of said Indian creek ditch"; that at the time of the purchase by the city such possession and use of said fifty inches of water was open, notorious and visible, and the city, by exercising reasonable diligence, could have learned that such possession and use were under a claim of right, and by proper inquiry could have ascertained the extent and nature of such right. The sufficiency of this is contested upon grounds of both law and fact. As to the law, it is vigorously argued that, since a water right is a mere right to the use of water (*Smith* v. *Denniff,* 24 Mont. 27, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398), possession of it in any manner capable of giving notice is impossible. If this be correct, there can be no such thing as title to a water right by prescription, since such title must be founded upon a posses-

sion no less open and tangible than the possession here pleaded; yet such title to a water right can be acquired. (*State* v. *Quantic,* 37 Mont. 32, 94 Pac. 491; *Smith* v. *Duff,* 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981; *Featherman* v. *Hennessy,* 42 Mont. 535, 113 Pac. 751.)   Difficulties in the way of proof there may be, but it seems to us perfectly clear that such use as respondent pleads ought to be enough to put a purchaser upon notice.   The burden to establish it was, however, upon the respondent (*Hull* v. *Diehl,* 21 Mont. 71, 52 Pac. 782; *Mullins* v. *Butte Hardware Co.,* 25 Mont. 525, 87 Am. St. Rep. 430, 65 Pac. 1004; *Sheldon* v. *Powell,* 31 Mont. 249, 107 Am. St. Rep. 429, 78 Pac. 491), and the serious question is whether the respondent has successfully carried that burden.   What the precise condition was at the time of the city's purchase in 1901 is not too [4] clear.   Regarding the use of water prior to that time, Harrington says, in effect, that at some time within eleven years after 1881, 1882 or 1883 he saw a pipe—length and diameter not given—in the Indian creek ditch at the Custer mines property. Bonathan deposes that from April, 1890, to June, 1898, the water for the company boarding-house was procured in the summer time by means of a three-inch pipe syphoned from the same ditch, that the superintendent's house was supplied through a syphon and his lawn and garden—not to exceed two acres in all —were irrigated through a gate in the ditch, and that there was another pipe-line from the ditch, but he does not know for what it was used.   Duncan testifies that during a portion of the year from August, 1894, to August, 1895, when suitable water was not to be had from the Iron Age gulch, he saw water pumped from the Indian creek ditch through a pipe the intake of which was two inches, for the boilers and compresser at the Custer mine.   Gulker claims that during the year 1897 to 1901 he saw water used on the superintendent's lawn, on Reis' lawn or garden, on Kramer's garden, in the stable, and in Bonathan's boarding-house kitchen, through pipes.   Myers asserts that in 1899 he often crossed the Indian creek ditch and saw water used on the superintendent's lawn at the Custer mine, and saw pipes

in his house.    Myles testifies that he saw water used by the Custer mines people every year after 1893 "on lawn, at the boarding-house, and things of that kind," such use being by means of a ditch to irrigate about one-half an acre, and three or four pipes which tapped the ditch at different places over a distance of about a quarter of a mile.    Slates says that during the period from 1888 to 1904 he saw water used from the Indian creek ditch at the boarding-house in the summer, on the superintendent's lawn, at Kramer's house and garden through a three or four inch pipe, by Brewer for his garden also through a pipe, by Peter Reis for his lawn and small garden, and once through a pump for the boilers.    Brewer's garden and Reis' lawn and garden were not on the respondent's property at all; while the superintendent's house was on the General Sherman lode.    Assuming, however, that these uses were all in virtue of some relation to the then owner of the respondent's property and were in full blast when the city purchased in 1901, the sum total of it is this: An inquirer might then have seen that by means of one small waterway and some pipes stuck into or hung over the ditch, water had been diverted for the irrigation of a lawn or two and a small garden or two, and for supplying a house or two, and perhaps a stable, the entire quantity thus diverted being nowhere near fifty inches, and negligible as compared with the carrying capacity of the ditch.    What further he could have learned by pursuing the inquiry is not disclosed. The record is barren of any intimation that he would or might have been informed of the claim of right, to say nothing of the unrecorded grant, while it is made to affirmatively appear from the testimony of the Clarks, then owner and superintendent, respectively, of the respondent's property, that the use in question was merely from convenience without knowledge of any grant and without claim of any right.    We cannot convince ourselves that, under these circumstances, notice of the unrecorded grant is chargeable to the city.    (Rev. Codes, secs. 6229, 8073.)    The possession of real property which will amount to notice of an [5]    unrecorded grant thereof must be under such grant, must

be unequivocal, inconsistent with the title of the apparent owner of record, and of such a character that an intending purchaser could, by following up the inquiry, learn of the unrecorded grant. (*Brown* v. *Volkening,* 64 N. Y. 76, 83; *Page* v. *Waring,* 76 N. Y. 463; *Crossen* v. *Oliver,* 37 Or. 514, 61 Pac. 885; *Sheldon* v. *Powell, supra; Mullins* v. *Butte Hardware Co., supra.*)

3. Nowhere in respondent's chain of title from Cleveland and Halford is there any mention of the fifty-inch water right granted them by the unrecorded deed of Murray and McElroy; but it [6] is the claim of respondent that this right descended to it from Cleveland and Halford, by mesne conveyances, in virtue of the appurtenance clause contained in each of the deeds. For this to be tenable, the water right must have been appurtenant to the lands at the time they were conveyed by Cleveland and Halford, and the burden of showing such to be the fact was upon the respondent. (*Smith* v. *Denniff, supra.*) The deed from Murray and McElroy to Cleveland and Halford is char-[7] acterized by Mr. Muffly as an absolute one; that is, as he distinctly says, the water right was not granted for any special purpose or for any particular lands. This being so, it was not an appurtenance by the terms of the deed, and it could not be conveyed as an appurtenance unless Cleveland and Halford gave it that designation and character by using it with and for the benefit of the land. (Rev. Codes, sec. 4429; *Tucker* v. *Jones,* 8 Mont. 225, 19 Pac. 571; *Sweetland* v. *Olsen,* 11 Mont. 27, 27 Pac. 339.) This the evidence before us fails to show. [8] Cleveland and Halford were owners in severalty of two adjoining quartz lodes—Halford of the General Custer from October, 1881, to November 20, 1888, and Cleveland of the Aqua Frio from October, 1881, to March 5, 1889—which they were working through a common shaft; but there is nothing in the record to indicate that the fifty-inch right in question, or any part thereof, was ever used in connection with these mining operations, or was ever used by either of them for any purpose save as might be inferred from the statement of Harrington that at some time within eleven years of 1881, 1882, or 1883, and

while Cleveland and Halford were working the Custer mine, he saw a pipe in the Indian creek ditch at some point in its course across the mining ground. Counsel for respondent on page 39 of their brief concede that this is all, and assert that it is enough; but, when we consider that Harrington tells us nothing about the pipe, whether it was of a character and so placed as to be useful for carrying any substantial quantity of water, says distinctly that he never saw any water from the ditch used on the lands of Cleveland or Halford, does not speak of having. seen any indications that any ever was so used, and does not intimate how, through the pipe he saw, it could have been used, it becomes impossible to conclude that the fifty-inch right became appurtenant to respondent's lands in the time of Cleveland and Halford. The suggestion is repeated in respondent's brief that the Indian creek ditch crosses respondent's property and is a burden upon it, as though that fact in some way stamped the water right granted in consideration of it as an appurtenance to the lands; but this circumstance is altogether indecisive, because it in no manner restricted the power of Murray and McElroy to grant, or of Cleveland and Halford to take, the fifty-inch right as an easement in gross, which in fact was done, according to Mr. Muffly.

4. This suit was begun in March, 1911, and to maintain the claim of title by prescription it was necessary for the respond-[9] ent to prove that since March, 1901, the property claimed, to-wit, the fifty-inch right out of the Indian creek ditch, or some definite portion thereof, was in the possession of the respondent and its grantors, and that such possession was open, notorious, exclusive and adverse to the claim of the city and under a claim of right. Assuming, without deciding, that there was a use of some water under circumstances to justify calling such use "adverse" (*Talbott* v. *Butte City Water Co.*, 29 Mont. 17, 73 Pac. 1111; *Smith* v. *Denniff*, *supra*; *Featherman* v. *Hennessy*, *supra*), the impossibility of determining the quantity of water so used is perfectly manifest from what has already been said. There is nothing to show that from 1901 to 1904 the extent and character

of the use were in any wise different from what has been above detailed in subdivision 2 of this opinion as the condition at and prior to 1901; and this, coupled with the absence of anything to show a claim of right on the part of the person then making such use, must dispose of the matter of prescription.

Respondent's counsel present in their brief, as tending in some way to fortify the findings and decree, questions touching the [10]  right of the city to take all the waters of Beaver creek from their watershed, and, pending their use for municipal purposes, to lease them to the intervener.   The right of the city, as against inferior claimants, to take these waters from their watershed, is settled.   (*Spokane Ranch & Water Co.* v. *Beatty*, 37 Mont. 342, 96 Pac. 727, 97 Pac. 838; *Carlson* v. *City of Helena*, 43 Mont. 1, 114 Pac. 110; *Lokowich* v. *City of Helena*, 46 Mont. 575, 129 Pac. 1063.)  The respondent asserts no right save that considered above.   Having failed, up to this time, to establish that right, we cannot assume that it has any, and, if it has none, it is in no position to question the lease.

The judgment and order appealed from are reversed and the cause is remanded for new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied April 20, 1916.