[S. F. No. 329.   Department One.—May 19, 1899.]

MURDOCK NICHOLSON, Respondent, v. WINIFRED C. TARPEY et al., Appellants.

SPECIFIC PERFORMANCE—LOST CONTRACT—EVIDENCE—DECLARATIONS OF VENDOR.—In an action for the specific performance of a written contract for the conveyance of land, which has been lost, parol evidence must be confined to proof of the contents of the written instrument; and evidence as to the declarations of the vendor made subsequent to the date of the contract, as to what land had been sold by him, is inadmissible.

ID.—DEED WITH INSUFFICIENT DESCRIPTION—FRAUD—DISCOVERY—STATUTE OF LIMITATIONS.—Where the complaint for spec fic perfoi mance alleges that, by the fraud of the vendor, a deed of an insufficient quantity of land to comply with the contract of sale was, by premeditated deception, imposed upon the plaintiff, and was accepted by him as a fulfillment of the contract, and that the fraud was not discovered until just before the action was commenced, if it appears as a fact that the plaintiff knew, more than seven years before the commencement of the action, that the conveyance was of an insufficient quantity, and what were the acreage, location, and boundaries of the tract therein described, the plea of the statute of limitations of four years is not avoided by the alleged fraud.

ID.—PLEADING OF LIMITATIONS.—The statute of limitations may be properly pleaded by reference to the numbered sections, and subdivisions thereof, of the Code of Civil Procedure, relied upon in bar of the cause of action.

ID.—OMISSION TO FIND UPON PLEA OF STATUTE.—Where the statute of limitations is pleaded, and there is evidence in support of the plea, the omission to find thereupon is error.

ID.—ACTION AGAINST DISTRIBUTEES OF DECEASED VENDOR—POSSESSION OF ꞏLAINTIFF.—Where the action to enforce the agreement to convey more land than was described in the deed was delayed more than seven years, and until after the distribution of the estate of the deceased vendor, and was brought against his distributees, so as to avoid the incompetency of the plaintiff to testify against his estate, the statute of limitations ought to apply to the action; and the fact that the plaintiff had possession of an inclosed tract covered by the deed, and had cut wood on the remainder of the tract included in the alleged agreement, which it appears was unimproved grazing land, upon which the cattle of the vendor and his distributees had grazed, cannot render the statute of limitations inapplicable.

ID.—ACTION NOT BASED UPON RIGHT OF POSSESSION.—An action to enforce the specific performance of a written agreement to convey land is not based upon the right of possession; and the pos-

session of the plaintiff, even if it were a fact, cannot defeat the bar of the statute, where the case is such that, under all the circumstances, it is justifiable to invoke and apply the statute of limitations.

APPEAL from a judgment of the Superior Court of Monterey County and from an order denying a new trial. John Reynolds, Judge.

The facts are stated in the opinion of the court.

D. M. Delmas, for Appellants.

Parol evidence to the contents of the lost contract can go only to its language substantially stated with clearness and certainty; and cannot extend to prior or subsequent conversations with the vendor. (*Nicholson v. Tarpey*, 89 Cal. 617; 1 Greenleaf on Evidence, sec. 275; *Edwards v. Noyes*, 65 N. Y. 127; *Dennis v. Barber*, 6 Serg. & R. 420; *Kenner v. Bank*, 9 Wheat. 597; *Massure v. Noble*, 11 Ill. 531; *Shorter v. Shepard*, 33 Ala. 648, 657, 658.) The action is barred by the statute of limitations, the plaintiff having known the alleged fraud as early as 1872. (Code Civ. Proc., sec. 388, subd. 4.) The action could have been brought against the personal representatives of Tarpey. (Code Civ. Proc., sec. 1880, subd. 3.) Plaintiff's evidence is impeached, and he is entitled to no consideration.

Tuttle & Patton, H. V. Morehouse, and H. D. Tuttle, for Respondent.

The declarations of Tarpey against interest are admissible against him and those claiming under him. (Code Civ. Proc., secs. 1853, 1870, subd. 4; *Dennis v. Chapman*, 19 Ala. 29; 54 Am. Dec. 186.) The statute of limitations was not well pleaded, the various sections being referred to in one clause or section. Separate defenses must be separately stated. (Code Civ. Proc., sec. 441.) The statute did not run against Tarpey, there being a trust relation between the vendor and the vendee in possession. (*Bodley v. Ferguson*, 30 Cal. 511; *Love v. Watkins*, 40 Cal. 565; *Bartlett v. Judd*, 23 Barb. 263; *Luco v. De Toro*, 91 Cal. 405; *Smith v. Matthews*, 81 Cal. 120; *Coulson v. Walton*, 9 Pet. 62; Hill on Trustees, sec. 264.)

VAN DYKE, J.—This is the third appeal of this case. The undisputed facts are these: In 1867, Matthew Tarpey was in possession and claimed to be the owner of the Carneros Rancho, in Monterey county, near the town of Watsonville, consisting of four thousand four hundred acres. Murdock Nicholson was at the time living in San Francisco. In May or June of that year Nicholson came to Watsonville with a view of finding and buying some desirable piece of land. After some negotiations, an understanding was reached between the parties whereby Nicholson was to purchase for fifteen hundred dollars a piece of the rancho, which both parties assumed to contain about four hundred acres. The conveyance was to be executed upon completion of the payment. The tract lay in the northeast corner of the rancho, fronting on the south side of the public road leading from Watsonville to San Juan. About one hundred and fifty acres, more or less, adjoining the road was susceptible to cultivation. After the agreement to purchase Nicholson returned to San Francisco, leaving the land purchased in charge of Tarpey, who agreed to take care of it and see to the payment of the taxes. Under this arrangement Tarpey for four years, from 1867 to 1871, looked after the property. He yearly returned to the assessor four hundred acres of the land to be listed to Nicholson, and four thousand acres, consisting of the remainder of the rancho, to himself. In 1868, Nicholson having completed the stipulated payment, Tarpey delivered to him a deed, which he represented to be in conformity with the agreement, and which was accepted as such by Nicholson. The instrument was at once sent to Monterey county, where it was recorded. In February, 1872, Nicholson, with his family, moved down and built a home upon the arable tract adjoining the public road. He at once caused a survey to be made, and ascertained the location of the lines of his deed upon the ground, and found that the description, instead of covering four hundred acres as supposed, included something less than two hundred. Tarpey owned and was occupying the land all around him, and the relation of the two parties seems to have remained friendly as before. Immediately after making the discovery that the land fell short of what was supposed, Nicholson gave in two hundred acres for the purpose of

assessment, instead of four hundred theretofore given by his
agent Tarpey, and thereafter he gave in two hundred acres as
the land belonging to him. In 1872, when Nicholson first
gave in the land belonging to him as two hundred acres, it
seems to have occurred to the assessor that the two hundred
additional acres theretofore assessed to him should be put on
Tarpey's assessment, as the latter was still the owner of the rest
of the rancho. He accordingly called Tarpey's attention to
the matter, who replied: "Well, the land has been surveyed, and
of course you can put that on my assessment—the two hun-
dred acres—you can add it to my assessment." Accordingly,
from that time on Nicholson was assessed for two hundred acres
and Tarpey for four thousand two hundred acres. Tarpey died
in 1873. Thenceforth until the spring of 1879 the land out-
side the tract covered by the deed "remained uncleared,
uncultivated, unimproved, and uninclosed, . . . . open to the
cattle grazing on the adjoining lands, and the cattle from the
adjoining lands, including the cattle of Matthew Tarpey dur-
ing his lifetime, and after his death of the defendants in this
action, frequently roamed and grazed upon the said uninclosed
portion." In 1879, Nicholson fenced in the land outside of
his deed, and which is claimed in the action to have been in-
cluded in this agreement of purchase, and in March, 1880,
brought this action against the widow and children of Mat-
thew Tarpey. The action is for specific performance of the
alleged agreement between the plaintiff and Matthew Tarpey,
and which it is alleged the deed of conveyance of 1868 failed
to fully perform in reference to the quantity of the land to be
conveyed.

On the first appeal (*Nicholson v. Tarpey*, 70 Cal. 608) the
judgment was reversed on the ground of error in the admission
of testimony on the part of the plaintiff as to what he told the
assessor when he gave in the property for assessment. On the
second appeal (*Nicholson v. Tarpey*, 89 Cal. 617) the judgment
on the second trial was reversed on the ground also of error in
the admission of testimony in reference to a conversation be-
tween the parties at the time of entering into the agreement
which was offered and received for the purpose of proving the
contents of said agreement.

On this appeal, the first point made by the appellant is that the court below erred in the admission of testimony which seems to have been offered for a similar purpose to that referred to on the second appeal. On the trial the plaintiff asked the witness Gilkey the following: "Q. Did you, in June, 1867, have a conversation with Matthew Tarpey, in which he said he had made a sale of the land in controversy to the plaintiff, and, if so, state what that conversation was?" After objection being properly made and noted on the part of the defendants, plaintiff's counsel stated that he offered to prove by the witness, as tending to prove the agreement between Nicholson and Tarpey, as set out in the complaint, that he had a conversation with Tarpey in June, 1867, in which Tarpey stated to him that he had sold the land to Nicholson, pointing out the boundaries substantially as stated in the complaint. Thereupon the court overruled defendants' objection and admitted the testimony. The witness said that he was talking to Tarpey about buying a piece of land, and Tarpey replied: "I have sold that piece of land already to a man in San Francisco"— describing the land, and saying that it was some six hundred or eight hundred acres, but that the greater part of it was not worth anything. Thereupon the defendants moved to strike out the testimony upon the grounds stated in the objection, and also that it appeared from the answer that it would shed no light whatever upon the contents of the writing between Nicholson and Tarpey, referred to in the complaint, nor upon the terms of the agreement for the sale of the land mentioned in the complaint. The motion was denied and exception duly taken. On the former appeal this court used the following language in reference to the testimony then offered which was held to be erroneously admitted: "The material question was as to the language of the written contract. Whether lost or not, there could be no evidence, in the absence of mistake or fraud of the intention of the parties, other than the written instrument itself. The rights of the parties must be ascertained from its terms. (Code Civ. Proc., sec. 1856.) The code expressly provides in case of lost instruments for oral evidence of its contents. (Code Civ. Proc., secs. 1855-1870, subd. 14.) Evidence of the character received in this case imposes upon

the court the construction of the contract by the witness. In *United States v. Britton*, 2 Mason, 464, Justice Story remarked: 'If no such copy exists, the contents may be proved by parol evidence by witnesses who have seen and read it, and can speak pointedly and clearly to its tenor and contents.'" The same rule which declares incompetent the statements of one of the contracting parties made before or contemporaneously with the execution of the written agreement equally declares incompetent his declarations made after such execution. The reason in both cases is the same. In neither are the declarations evidence of the contents of the paper, the only thing which, the paper lost or at hand, the law allows to be proven. The rule that no contract for the sale of land is valid unless embodied in a writing signed by the party to be charged has, since its promulgation in the reign of Charles II, been adopted and embodied in the jurisprudence of every English-speaking community. Greenleaf says: "All oral testimony of a previous *colloquium* between the parties, or of conversation or declaration at the time when it was completed or afterward, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." (1 Greenleaf on Evidence, sec. 275.) In *Edwards v. Noyes*, 65 N. Y. 127, it is said: "Parol evidence to establish the contents of a lost deed should be clear and certain. It should show that the deed was properly executed with the formalities required by law. It should show all the contents of the deed, not literally, but substantially. If anything less than these requirements would suffice, evil practices, which it was the object of the statute of frauds to prevent, would be encouraged."

The testimony of the witness Gilkey did not purport to give the contents of the written agreement, and did not show that he had ever seen the written agreement, between Tarpey and the plaintiff, or read it or heard it read. It is simply the expression of Tarpey that he had sold a part of his rancho to a man in San Francisco, without even giving the name of the man to whom he had sold it. Under well-settled rules, the testimony was clearly inadmissible.

Appellants also rely upon the statute of limitations as a bar

to the action.   The gravamen of the complaint is the fraud alleged to have been practiced by Tarpey upon the plaintiff in 1868 by imposing upon him, by means of premeditated deception, a deed which was intended and accepted as a fulfillment of the contract, but which in fact did not cover one-quarter of the land therein described.   As the action was not brought until twelve years afterward—1880—the plaintiff seeks to ʾavoid the plea of the statute of limitations by averring that he did not discover the fraud until just before the bringing of the action. He says in his complaint "that the plaintiff was wholly unsuspicious of any attempt or design on the part of the said Matthew Tarpey to deceive or defraud him, and implicitly relied on his statements and representations, and he himself being unable to read said deed, the same was laid away and unthought of until said month of April, 1879"; and that "in the latter part of said month of April, 1879, or in the following month of May, he was for the first time informed and advised that his said deed from the said Matthew Tarpey did not include or embrace within its calls the whole of the lands . . . . which the said Matthew Tarpey had agreed to convey to him, . . . . but that the same included or described only one hundred and ninety-one and fourteen one-hundredths acres. . . . . That up to that time last aforesaid he had never thought, believed, or suspected that said deed described a less, other, or different parcel of land from that herein first above described."   These averments are made by the plaintiff under oath, yet in his testimony on the trial he is compelled to admit that in 1873 he directed his wife to "take the deed to Mr. Craig's [a lawyer's] office," and adds: "I wanted him to look if this land was specified in the deed that I have got from Tarpey.   I wanted my wife to ascertain what land was described within the boundaries of my deed; to examine it carefully.   My wife could not find Mr. Craig, so she went to Mr. Barham's office"; and he further admits, on such examination in court, that after he came to live upon the land in February, 1872, he gave in the property to the assessor for assessment, and the assessor's testimony and the assessment itself shows that he gave in two hundred acres, and no more, as already shown.   Mr. Barham, to whom by direction of the plaintiff his wife went for advice, testified that after showing him the deed she said "there

was a controversy between herself or her husband and Mr. Tarpey about certain land, and that paper contained a description . . . . of the land." She stated during the course of the conversation that Mr. Tarpey had sold them or conveyed to them two hundred acres of land. The assessor testifies that the wife told him that they "had it [the land described in the deed] surveyed, and there was less than two hundred acres." In fact, the court is obliged to find from the testimony at the trial, in the face of the averments in the complaint sworn to by the plaintiff, that "as early as the beginning of the year 1872 said Nicholson ascertained and knew that the description contained in said conveyance did not include all the land described in said agreement, and did not comprise more than two hundred acres thereof, and knew the location on the ground of the lines and boundaries described in said conveyance." It is clear, therefore, that the plaintiff knew as well in 1872 or 1873 all of the alleged facts and circumstances connected with the transaction upon which the alleged fraud and misrepresentation are based as at the time of beginning the suit. It is claimed, however, on the part of the respondent, that the statute of limitations is not properly pleaded. The following is the portion of the answer containing the pleading: "And these defendants aver and say that the said pretended cause and causes of action of the plaintiff are each and all thereof barred by section 337, chapter III, title II, part II, of the Code of Civil Procedure of California, and also by section 343 of same chapter and title and part of said Code of Civil Procedure, and also by section 319 of chapter II of said title and code."

Our Code of Civil Procedure changes the old rule in reference to pleading the statute of limitations. It is as follows: "In pleading the statute of limitations, it is not necessary to state the facts showing the defense, but it may be stated generally that the cause of action is barred by the provisions of section —— (giving the number of the section and subdivision thereof, if it is so divided, relied upon) of the Code of Civil Procedure." (Code Civ. Proc., sec. 458.) The plea of the statute in this case is according to the requirements of the code, and is sufficient. (*Hagely v. Hagely*, 68 Cal. 348; *Alhambra Water Co. v. Richardson*, 72 Cal. 598; *Webber v. Clarke*, 74 Cal. 11.)

But inasmuch as the court found that the plaintiff had since 1871 exclusively occupied and possessed the premises described in the written agreement, it is contended by the respondent that the statute of limitations does not apply. This, however, is not an action based upon the right of possession, or to recover possession, but its purpose is to obtain the legal title to the premises in controversy by enforcing the alleged written agreement between Tarpey and the plaintiff—in other words, the specific performance of said alleged contract; and, therefore, the possession of the plaintiff, if it were a fact, would not avail to defeat the bar of the statute in the present action.

This case is one, as shown by the testimony and all the surrounding circumstances, where it is justifiable to invoke and apply the bar of the statute of limitations, if ever. Under the old rule, the testimony of an interested party was not received, but now all parties, with certain exceptions, are allowed to give testimony, the credibility of such testimony to be left to the court or jury. One of the excepted case is that "parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person," cannot be witnesses. (Code Civ. Proc., sec. 1880, subd. 3.) To escape this wholesome provision of the law, the action in this case is not against the estate of the deceased, Tarpey, but it is against those who succeeded to his title and estate after the settlement and distribution of said estate. It gives the plaintiff full sweep to testify—and the character of his testimony has already been noticed—whereas the other party to the contract had been dead some seven years before the action was commenced.

The plea of the statute set up in the answer presented an issue upon which the court should have found, and the failure to so find is assigned as error, and now urged by the appellant. As already stated, the court finds that since 1871 the plaintiff has been in the actual and exclusive possession, adverse to all the world, of the premises in controversy, whereas the record shows that "it was proved by competent testimony that the piece of land stated in the complaint herein to have been described in the

agreement alleged in the complaint to have been executed in June, 1867," was located as already stated, and that, outside of the inclosed part of about two hundred acres, the rest was "rough uncleared, uncultivated, and unimproved, consisting mostly of dense chapparal hills, with a few grassy canyons, and a little timber; that this part of the land remained uncleared, uncultivated, unimproved and uninclosed up to March, 1879; that during the whole of this time, to wit, from 1867 to 1879, this uninclosed portion of said tract was open to the cattle grazing on adjoining lands, and the cattle from the adjoining lands, including the cattle of Matthew Tarpey during his life, and after his death of the defendants in this action, frequently roamed over and grazed upon the said uninclosed portion; that no other use was made of this uninclosed portion, except for grazing purposes, except that the plaintiff cut wood therefrom."

The court finds that Tarpey was the owner in fee of the Rancho las Carneros at the time of entering into the contract. The pleadings admitted and conceded that Tarpey was the owner of only seven-eighths of the rancho, and the respondents' counsel concedes that these admissions are according to the fact, and that the finding in this respect is erroneous; but he suggests that, if the judgment is sustained in all other particulars, the court below be directed to amend its decree accordingly, instead of ordering a new trial.

For the reasons, however, given in reference to other parts of the case the judgment and order denying a new trial are reversed.

Garoutte, J., and Harrison, J., concurred.