[L. A. No. 9199.   Department One.—January 8, 1929.]

JENNIE WOLF, Respondent, v. JAMES DONAHUE et al.,
Appellants.

Koenig & Ramsaur and Victor H. Koenig for Appellants.

Thomas A. Wood and Michael F. Shannon for Respondent.

SEAWELL, J.—This appeal was taken from a judgment decreeing that by a contract and agreement entered into by and between Daniel Donahue and respondent, Jennie Wolf, in 1911, she was entitled to all of the real and personal property standing in the name of Daniel Donahue at the time of his decease and claimed by the administrator of his estate as property belonging to his estate and directing that conveyances of the real property be executed and delivery of the personal property be made to respondent by said administrator after the payment of all lawful subsisting claims and demands against said estate and costs of administration.

Daniel Donahue, who located in California a number of years ago, died intestate, a resident of Ocean Park, county of Los Angeles, on or about December 3, 1923, at about the age of sixty-eight years, leaving real and personal property situate in the county of Los Angeles standing in his name aggregating about $54,000 in value. An original mortgage in the sum of $12,000 upon the real property had been reduced by the payment of $3,000, leaving an existing balance due of $9,000. Daniel Donahue left no child or children, his heirs at law being three brothers and three sisters, appellants herein, all of whom are past or well along in middle life.

Decedent and respondent, Jennie Wolf, were first cousins, their respective fathers being brothers. Before coming to the United States of America from England, respondent, who

was then a small child, and her mother lived at the home of Daniel's father. Upon coming to America, respondent subsequently married and located at New Haven, Connecticut, where she and her husband, who was a landscape gardener, resided until the latter's death, which occurred May 11, 1911. Respondent was left a widow, with one son, aged about seventeen years, and two daughters, aged about eleven and fourteen, respectively. A correspondence had its inception in 1910 by respondent writing a letter to Daniel Donahue's wife addressed to her residence at Ocean Park, in which she stated that her husband was thinking of coming to Ocean Park to engage in landscape gardening. No answer was received to this letter until about one year later, at which time it was answered by Daniel Donahue. In the meantime he and his wife had become divorced and the husband of Jennie Wolf had deceased. In this letter he lamented his loneliness and ill health. He was then engaged in conducting a fish and poultry market at Ocean Park. In his letter, not being previously informed as to the death of respondent's husband, he inquired if he was still thinking of coming to California to engage in landscape gardening and wrote encouragingly of the outlook. In her return letter she informed him of her husband's death and told him that any notion she had previously entertained of coming to California would have to be abandoned because of her husband's demise. Within two weeks after writing the above information to Daniel Donahue she received a second letter from him in which he expressed his sorrow at the death mentioned and advised her not to worry as living troubles, doubtless having in mind his separation from his wife, were worse than death. He further suggested that as long as her husband was dead he could not see how that event should interfere with bringing her family to California and making their home with him. He said he was very ill and could not attend to both his home and business and he needed someone to look after the home and that if she came to his home she would never be sorry for so doing; that neither she nor her children should ever be in want and that when he should pass away he would see to it that everything he had would be hers and her children would be well cared for. She showed the letter to a neighbor, with whom she advised, who corroborated respondent on substantial matters as to the contents of said

letter. Her testimony is that she replied to his letter and informed him that she was conducting a wardrobe, dry-cleaning, dressmaking and remodeling business at New Haven, was among neighbors and friends and was getting along well and that she was not inclined to break up her home and go to California without any assurance that she would improve her situation. The correspondence extended through a period of about five months in which he repeated his promise to leave her his estate upon his death if she would come to California, do his housekeeping and help him in his business. On October 9, 1911, he forwarded to her transportation for herself and three children and she disposed of her personal effects and went with her children to his home at Ocean Park and remained a member of his household until his death, December 3, 1923. The poultry and fish business he was conducting was of unknown value. The market was destroyed by fire in September, 1912. He owned two lots at Ocean Park valued at $700 and $4,000, respectively. Some time after the destruction of the market by fire he re-established the poultry business at his home and subsequently erected a quadruple apartment house. Her testimony as to the services she rendered during the twelve years of her residence in decedent's home, for which she received no compensation, constitutes a full chapter of long hours spent in dressing and preparing fowls of all kinds for the market, caring for and raising fowls, assisting in conducting the poultry business, cooking, washing and doing work of a housekeeper, as well as doing menial service in keeping the apartment house in order. Testimony was given by several witnesses which either directly supported or tended to support respondent's claims. Testimony, on the other hand, was offered by the brothers and sisters tending strongly to rebut the contention that decedent had agreed or contracted to leave his property by will to respondent for personal services or assistance to be rendered by her to him. ▮ In this class of cases the temptation is strong for those who are so inclined to fabricate evidence giving color to the claim that a written agreement subsequently lost or destroyed was made by a decedent to dispose of his property at death to the claimant. For this reason the trial court should closely scrutinize the testimony of interested parties who offer themselves to re-establish an alleged loss or destroyed written contract or agreement, lest

an irremediable wrong be done to the heirs of a decedent whose lips cannot speak in protest against the consummation of a wicked design. But where the evidence is legally sufficient to sustain the judgment, as in the instant case, we must assume that the trial court scrutinized the testimony of the witnesses in the light of the interest which each may have had in the result of the trial.

The contract upon which the action was brought consisted of a number of letters that passed between said Daniel Donahue and respondent, Jennie Wolf, which had long since been destroyed by said respondent. The contents of said correspondence, which began in May and concluded in October, 1911, by respondent coming to Daniel Donahue's home, were re-established by parol evidence. The letters written by Jennie Wolf in reply to his, if not destroyed by him shortly after being received, were probably destroyed by a fire which consumed his place of business in 1912.

At the time respondent took her place in the Donahue household his real property was of small value, not exceeding $4,700, and there is no evidence showing that he possessed personal property of any consequence.

The trial court found that on or about October 9, 1911, he entered into a contract in writing with respondent whereby the respondent was to come to Ocean Park and bring with her her children and devote her time solely and exclusively to the household comfort of Daniel Donahue, doing the household duties, cooking, mending and working for the said Daniel Donahue and to care for him during his illness and look after his general welfare and comfort so long as he should live; that in consideration of those services he agreed that upon his death he would leave a will devising and bequeathing to the said Jennie Wolf all the property of which he might die seised, real and personal; that both accepted the terms of said contract and the respondent fully and faithfully performed all of its terms and conditions on her part to be performed and that said Daniel Donahue died on December 3, 1923, leaving no will or other instrument conveying said property to said respondent. The court specifically found that respondent, in addition to doing all the household work, assisted said Donahue through a series of years in the conduct and management of his business, to wit, a fish and poultry market and grocery-store, and in the preparing and

dressing of poultry for market; that said Donahue in the spring of 1913 erected an apartment house upon a lot which he owned at the time he entered into said contract and for a period of nine years respondent did a large part of the general work required to keep the same in habitable condition, such as sweeping and cleaning said apartments, washing blankets and curtains and doing the janitor work in general. The court further found that said Daniel Donahue at the time he entered into said contract with Jennie Wolf owned two lots, one situate in Ocean Park and the other situate in the city of Venice, state of California, being then of the value of $4,000 and $700, respectively, and also a fish and poultry business of unknown value; that on September 1, 1912, the building located on one of said lots and the building in which the fish and poultry business was conducted, were destroyed by fire; that thereafter the poultry business for a time was conducted at the residence of said Daniel Donahue. The court found the contract was fair, just and equitable in all respects as between the parties thereto. The court lastly found that all of the property left by said Daniel Donahue, deceased, was in the process of being probated, and that it was subject to all just claims and demands against said estate and the costs of administration and that Jennie Wolf was entitled to a decree carrying into effect the full performance of said contract; that appellants, who are the heirs at law of said Daniel Donahue, hold the legal title to said real property of which said Daniel Donahue died possessed as trustee for the use and benefit of said Jennie Wolf. As conclusions of law from the facts found the court concluded that Jennie Wolf is the equitable owner of all the property of which said Daniel Donahue died seised and possessed, subject to the payment of his debts and the costs, charges and expenses of administration. Said appellants and the administrator of the estate of Daniel Donahue, deceased, were directed to execute all necessary conveyances in favor of said Jennie Wolf and to pay over to her all personal property that may have come into their possession as heirs at law or as the administrator of said estate.

We are of the opinion that the court did not commit reversible error in overruling appellants' general demurrer to the amended complaint on the ground that it did not contain in specific terms an allegation that the decedent

received adequate consideration for the contract and that it was fair and equitable as to him. The rule is thus stated in *Magee* v. *Magee,* 174 Cal. 276 [162 Pac. 1023] :

"It is not necessary, however, that the complaint for specific enforcement should declare in the very words of the code that 'there was an adequate consideration for the contract' and that it was 'just and reasonable.' These allegations standing alone would be objectionable as embodying the mere conclusion of the pleader. The proper mode of pleading is to set forth the facts from which the court may conclude that the contract is supported by an adequate consideration and is, as to the defendant, fair and just. *Stiles* v. *Cain,* 134 Cal. 170 [66 Pac. 231] ; *White* v. *Sage,* 149 Cal. 613 [87 Pac. 193]."

The amended complaint conforms with the requirements above announced, inasmuch as the facts from which the court concluded that the contract was supported by an adequate consideration and was as to decedent fair and just are very fully set forth and from them, supported by the evidence, the court concluded that this was a proper case to enter its decree for specific performance. The motion for a nonsuit was properly denied, as we have held that the findings, which justify the conclusions, are, in turn, supported by the evidence.

■ Appellants complain that it was error for the court to admit secondary evidence to prove the contents of the letters which the respondent claims she burned. She testified that it was her habit to burn or destroy letters shortly after answering them and, as she attached no particular importance to the letters at the time and did not suspect they would have a future value, she destroyed them. Her testimony on the subject is that she probably burned them with accumulated papers and letters the first time she cleaned house after receiving them, or at the time she was preparing to leave for California. No suspicion arises from the bare circumstance of burning the letters as related by the respondent and inasmuch as the trial court was satisfied that said letters contained the substance of the contract contended for and were not destroyed with the intent of accomplishing a sinister purpose, this court will not review its ruling unless the proof is manifestly insufficient to warrant the secondary evidence or unless the evidence offered to establish the loss is in-

herently improbable or incredible. (*Kenniff* v. *Caulfield*, 140 Cal. 34 [73 Pac. 803]; *King* v. *Samuel*, 7 Cal. App. 55 [93 Pac. 391].) It cannot be said, as a matter of law, that the trial court abused its discretion by ruling the evidence admissible.

The statutes of this state provide that a person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament. (Civ. Code, sec. 1624, subd. 7; Code Civ. Proc., sec. 1973, subd. 7.) It is well settled in this state by numerous decisions that a court of equity will decree specific performance of such an agreement upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction. (*Owens* v. *McNally*, 113 Cal. 444 [33 L. R. A. 369, 45 Pac. 710]; *Doolittle* v. *McConnell*, 178 Cal. 697 [174 Pac. 305]; *Rogers* v. *Schlotterback*, 167 Cal. 35 [138 Pac. 728]; *McCabe* v. *Healy*, 138 Cal. 81 [70 Pac. 1008]; *Steinberger* v. *Young*, 175 Cal. 81 [165 Pac. 432].) There are cases involving questions of public policy, as, for example, the marriage of the promisor to a person other than the promisee subsequent to the time he contracted to dispose of his estate, or cases where the contract is contrary to good morals, or where the rights of intervening innocent third parties would be affected thereby, in which instances specific performance will not be decreed. None of these objections appear in the instant case.

It may be proper to state in passing that none of the brothers or sisters in the instant case were upon close or intimate terms with the decedent during the years that respondent lived in his household and that their relations with him were not such as to indicate that their interest in his welfare was more than that of brothers and sisters who had long been separated.

Judgment affirmed.

Curtis, J., and Preston, J., concurred.