[Civ. No. 11282. First Appellate District, Division One.—February 13, 1941.]

HARRIET F. COTTON, Appellant, v. W. G. HUDSON, Executor, etc., et al., Respondents.

Fred B. Mellmann for Appellant.

Hudson, Martin & Ferrante, Webster Street, George K. Ford and Simpson Finnell, Jr., for Respondents.

WARD, J.—Plaintiff, assignee of the payees of two promissory notes, appeals from a judgment in favor of defendant makers of the notes. The main question presented on appeal is whether the trial court erred in receiving testimony of the contents of a collateral written agreement, which defendants

claim was lost. Following the trial of the case, both defendants died and the executor and administrator respectively of their estates have been substituted in their places.

The facts of the case are as follows: L. C. Walters and W. Y. Bewick had been employees of Reid Bros., Inc., and each of them was the owner of a claim against the corporation for wages, the claim of Walters being in the sum of $5,885, and that of Bewick in the sum of $1832.50. These claims were assigned to James J. Hughes, who, with his wife, gave each a note for the amount of his claim pursuant and subject to a handwritten agreement already entered into between the claimants and defendant Hughes, by the terms of which payment was to be made only in the event Reid Bros. of America was successful in acquiring title to and possession of all the corporation assets of Reid Bros., Inc., within one year from the date of the agreement. At the time of the assignment of these labor claims, a third employee of Reid Bros., Inc., also assigned his claim to defendant Hughes on the same basis, but he does not appear in this action.

While no allegations of the loss of the collateral agreement above mentioned were made in the pleadings, or until the close of plaintiff's case, defendants were permitted by the court to amend so as to allege the loss of the instrument.

Plaintiff admitted the execution of the agreement, but disputed its terms and claimed the court erred in admitting evidence of its contents where there had been insufficient proof of a diligent and *bona fide* search therefor; also that the court erred in permitting defendants, over objection, to amend their respective answers so as to allege the loss of the collateral agreement.

Defendants argue that the court did not abuse its discretion in permitting secondary evidence of the contents of the document to be admitted, also that there was sufficient evidence to support the court's finding that the payment of the notes was conditioned upon a contingency that never occurred.

Where it is contended that a writing has been lost, proof of loss must be made before evidence of its contents may be given. (Code Civ. Proc., secs. 1855, 1937.) When there are circumstances indicating that the document is intentionally withheld, the sufficiency of the proof of its loss is a precise, definite and certain showing of a thorough and exhaustive search. The exactness of proof may be relaxed in proportion

to the evidentiary weight or value of the instrument, with due consideration given to the interest in its production of the party offering to prove loss. The sufficiency of the proof is a question of law addressed to the sound discretion of the trial court, and unless there is an abuse of such discretion its determination will not be disturbed on appeal.

After sufficient showing of loss, the contents may be proved by secondary evidence addressed to the trier of the facts. (*Kenniff* v. *Caulfield*, 140 Cal. 34 [73 Pac. 803] ; *White* v. *White*, 39 Cal. App. (2d) 57 [102 Pac. (2d) 432] ; *Wolf* v. *Donahue*, 206 Cal. 213 [273 Pac. 547].)

In the present case the agreement was in the handwriting of the receiver for Reid Bros., Inc. It was signed by the wage claimants and defendant Hughes. On the day following its execution, during a luncheon at which were present the receiver, Mr. Hughes, Mr. Hughes' then attorney and a Mr. Peters, the receiver, according to his testimony and that of Mr. Hughes, handed the agreement to Mr. Hughes' attorney who read it and placed it in his pocket. Mr. Peters testified that he accompanied the attorney to his (the attorney's) office and saw him place the document on his desk, saying he would make copies thereof. The attorney remembered reading the agreement, but did not recall taking it with him after the luncheon. He testified that at the request of the receiver and of Mr. Hughes he had made a diligent search of his papers and files but was unsuccessful in locating the instrument. Later he permitted Mr. Hughes to make a search of his files, which at that time had been removed to the attorney's home.

Appellant lists ten persons as possible sources of information in connection with the lost document, only four of whom were questioned. Of the remaining six, only one, another attorney, had any representative business connection with Hughes. This attorney had drawn certain documents in connection with the organization of Reid Bros., Inc., some years prior to the time of the preparation of the lost agreement. There is no evidence from which an inference may be drawn that anyone was given possession of the agreement except the attorney representing Mr. Hughes at that time. A diligent search was made of his office and his home, the most likely places where it might be found. The evidence does not indicate that any of the ten persons enumerated by appellant, other than those of whom inquiry was made, was reasonably

likely to have possession of the agreement or any knowledge of its whereabouts. (*Alvord* v. *Spring Valley Gold Co.,* 106 Cal. 547 [40 Pac. 27].)

There is no suspicion of wrongdoing in connection with the loss of the instrument in question. ▮ When the surrounding facts demand such inquiry, the law requires only a diligent investigation of every person who, according to the evidence, would be likely to have the document, or to know of its whereabouts. As stated, the question of the sufficiency of the preliminary proof of loss was one for the trial court on the evidence introduced, and the suggested grounds for disturbing its finding thereon are not sufficient as a matter of law. In *Wolf* v. *Donahue, supra,* 219, 220, the court said: " . . . this court will not review its ruling unless the proof is manifestly insufficient to warrant the secondary evidence or unless the evidence offered to establish the loss is inherently improbable or incredible."

Witnesses for the defendants in substance agree that the lost instrument provided the notes should not be payable or collectible unless within one year all assets of Reid Bros., Inc., were acquired by Reid Bros. of America. There was a conflict on other matters, namely, whether a certain witness was present when the agreement was signed, whether the agreement was handed to the attorney before or during the luncheon and whether in fact it provided for a reassignment of the wage claims in the event the plan for reorganization failed. The recollections of the witnesses are not entirely in accord with letters written by Mr. Hughes to the payees of the notes two days after the signing of the agreement, which letters were accompanied by the promissory notes. Each letter refers to the agreement and states that the note is to be paid off "at the rate and in proportion of three and four-tenths (3-4/10ths %) per cent per month of the total of said note as the same shall appear to be due from month to month". According to Hughes' testimony, the monthly payments were not to commence until the reorganization of the company was consummated; if not consummated within the year there was to be no liability on the notes. There is testimony that Hughes "wanted" to reassign to the wage claimants. Whatever the understanding may have been relative to the time for the payment of the notes, the trial court did not have the advantage of the testimony of either of the payees, assignors of plaintiff, who were not called as witnesses.

The question before this court is whether the evidence is sufficient as a matter of law to support the finding of an express provision for a conditional liability. The letters of transmittal were not complete statements of the contents of the agreement. Their evidentiary value primarily was not to prove the contents of the lost instrument, but rather to impeach the testimony of Hughes. In *Nicholson* v. *Tarpey,* 124 Cal. 442, 447 [57 Pac. 457], the court said: "The same rule which declares incompetent the statements of one of the contracting parties made before or contemporaneously with the execution of the written agreement equally declares incompetent his declarations made after such execution. The reason in both cases is the same. In neither are the declarations evidence of the contents of the paper, the only thing which, the paper lost or at hand, the law allows to be proven."

Some of the witnesses testified to the search and also to the contents of the agreement. It does not appear from the record that plaintiff was prejudiced in the admission of evidence of the contents of the lost instrument prior to proof of diligent search in good faith to locate it.

Appellant contends that the trial court erred in permitting defendants to amend their respective answers, without notice and after plaintiff's case had been closed, so as to plead the loss of the collateral agreement. Appellant admits that such an amendment is addressed to the sound discretion of the court. It is not claimed that plaintiff was prejudiced or suffered a disadvantage in the trial as a result of the amendment.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 3, 1941.