**Daniel E. MOORE, Appellant,**

v.

**Frank T. GREENE, Appellee.**

**No. 23315.**

United States Court of Appeals, Ninth Circuit.

Sept. 1, 1970.

Rehearing Denied Sept. 25, 1970.

As Corrected Oct. 9, 1970.

---

Harold C. Nachtrieb, Thomas W. Kemp, Miller, Groezinger, Pettit, Evers & Martin, San Francisco, Cal., for appellant.

J. R. MacMahon, Freitas, Allen, McCarthy, Bettini & MacMahon, San Rafael, Cal., for appellee.

Before MADDEN,* Judge of the Court of Claims, and CARTER and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal by Daniel E. Moore from judgments rendered against him on four counterclaims arising out of his action brought against Frank T. Greene.

Appellant, an attorney in Bisbee, Arizona, brought suit in 1965 against Greene, a resident of California and a former client of his, for non-payment of attorney fees totalling $300,000. Greene, in his answer, alleged that he had paid in full for all legal services rendered by Moore and instituted eleven

---

* The Honorable J. Warren Madden, Senior Judge, United States Court of Claims, sitting by designation.

counterclaims against Moore. At pretrial conference, Moore abandoned his original complaint. Prior to trial, one of the counterclaims was settled, and the matter went to trial on the ten remaining counterclaims. After a lengthy jury trial, judgments were entered on verdicts for Greene on four of the counterclaims.[1] These may be categorized as follows:

(1) Judgment for $61,000 plus interest in the amount of $33,878.65 due on six demand, interest-bearing promissory notes signed by Moore and delivered to Greene (counterclaim five);

(2) Judgment in the amount of $1,000 general damages and $2,000 punitive damages for intentional infliction of mental distress (counterclaim four), and

(3) Judgment in the amounts of $500 general damages and $3,000 punitive damages (counterclaim one) and $500 general damages and $500 punitive damages (counterclaim three) for two counterclaims alleging libel.

Moore appeals as to each part of the judgment. We consider each separately:

### (1) The promissory notes

Moore admitted the existence of the notes and that they constituted evidence of loans made to him by Greene in 1960 and 1961. He further admitted that they had not been paid, but claimed that their sum was exceeded by legal fees owed him by Greene and that it was originally agreed that the loans would be paid off by the performance of legal services. The jury chose not to believe Moore. They answered the following special interrogatory in the negative:

"Was there at any time an agreement between Mr. Moore and Mr. Greene that the $61,000 in promissory notes would be cancelled or liquidated by means of credits against earned but unbilled legal fees owing to [Moore's law firm]?

At trial, Greene could not find the original promissory notes but produced xerox copies of them which were received into evidence over Moore's objection that the copies could be used but that the originals must be produced. Some six days after completion of the trial but before judgment was entered, Greene located the originals. They were admitted into evidence eleven days later.

Moore now alleges that the district court had no jurisdiction to reopen the case to receive the original promissory notes. We find no error.

■ The reopening of the case for this limited purpose was a decision made within the sound discretion of the trial court, which will be disturbed on appeal only if an abuse of discretion is shown. See Alaska United Gold Min. Co. v. Keating, 116 F. 561, 565 (9th Cir. 1902); Missouri Pac. Ry. Co. v. Oleson, 213 F. 329, 332 (8th Cir. 1914); Caracci v. Brother International Sewing Machine Corp., 222 F.Supp. 769, 771 (E.D. La. 1963), aff'd per curiam, 341 F.2d 377 (5th Cir. 1965). See also Philadelphia & Trenton R.R. Co. v. Stimpson, 39 U.S. (14 Pet.) 448, 463, 10 L.Ed. 535 (1840). Under the circumstances of this case, we hold that there was no abuse of discretion. Moore does not claim that he was prejudiced by the reopening, nor can we find any prejudice. Moore on cross-examination admitted the copies appeared to be true and correct. (R.T. at 1234); that he did receive the monies evidenced by the notes (R.T. at 1234); and that none had been repaid (R.T. at 1235). The existence or amount of the notes was thus not a disputed, factual question for the jury. The tardy substitution of the original notes for the xerox copies could not possibly have affected the outcome of the case.

I. Of the six other counterclaims, the court granted Moore's motion for a directed verdict on one; the jury found for Moore on a second, and the court entered judgment for Moore on the remaining four based on special interrogatories submitted by the jury. The disposition of these counterclaims is not at issue in this appeal.

■ Appellant next alleges that the copies of the notes were not properly admitted into evidence because Greene did not make a sufficient proof of loss of the originals. Appellant suggests that this question of the sufficiency of the proof of loss affects the substantive rights of the parties and, pursuant to the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), must be determined by the law of the state in which the federal court sits. Cooper v. Brown, 126 F.2d 874, 877 (3d Cir. 1942). Appellant cites Cotton v. Hudson, 42 Cal.App.2d 812, 110 P.2d 70 (1941), which states: "Where it is contended that a writing has been lost, proof of loss must be made before evidence of ' its contents may be given." 42 Cal.App.2d at 814, 110 P.2d at 71. That case, however, goes on to say, "The sufficiency of the proof is a question of law addressed to the sound discretion of the trial court, and unless there is an abuse of such discretion its determination will not be disturbed on appeal." And, "The exactness of proof may be relaxed in proportion to the evidentiary weight or value . of the instrument, * * *" 42 Cal.App. 2d at 813–814, 110 P.2d at 71. An appellate court will not find an abuse of discretion "unless the proof is manifestly insufficient to warrant the secondary evidence or unless the evidence offered to establish the loss is inherently improbable or incredible." Wolf v. Donahue, 206 Cal. 213, 219–220, 273 P. 547, 550 (1929).

Following the cross-examination on the copies of the notes and the validity of the debt which they evidenced, the court in admitting the copies, said:

"At any rate there is no argument about the fact that the original debts were represented by promissory notes, whether they be available or not, they were written instruments which were executed at the time the money was received." (R.T. at 1241).

Under direct questioning by the court, the appellant further acknowledged that the $61,000 of promissory notes was his personal obligation to Greene and did not relate to appellant's law partnership. (R.T. at 1274).

We hold that, inasmuch as the evidentiary value of the notes was slight because their existence and amount had been agreed upon, the trial court did not abuse its discretion in finding that Greene had sufficiently proved the loss of the notes.

■ Appellant further argues that Greene was not entitled to judgment on the notes as he did not have possession of the notes at the time the action was commenced. This argument has no merit. Greene had relinquished the notes to a bank for collection, but received them back when the bank's demand for payment was refused. There was no evidence whatsoever that Greene had assigned or otherwise negotiated the notes to the bank or any other third party.

We affirm the judgment of the district court as to counterclaim five.

(2) *Intentional infliction of mental distress*

Greene's counterclaim number four alleged that Moore had intentionally inflicted mental distress upon him through five letters sent by Moore during a period of almost four years from December 5, 1959 to September 4, 1963. Two of the letters were sent to Greene at his home in California. One was sent to Carlos R. Freitas, Greene's lawyer in San Rafael, California; one to V. L. Swanner, a banker in Bisbee, Arizona, and one to A. R. Grambling, an attorney in El Paso, Texas. The jury found for Greene and awarded him $1,000 in general damages and $2,000 in punitive damages.

■ We think that California law is applicable. In a diversity case, a federal court must follow the substantive law of the state in which it sits. Erie R. Co. v. Tompkins, *supra,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. This includes the conflicts of law rules of that state. Klaxon Co. v. Stentor Electric

Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Matanuska Valley Lines, Inc. v. Molitor, 365 F.2d 358, 360 (9th Cir. 1966), cert. denied, 386 U.S. 914, 87 S.Ct. 864, 17 L.Ed.2d 786 (1967). According to California conflicts law, the forum state must consider all of the foreign and domestic elements and interests involved in a tort action. Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). Here, although the letters were sent from Arizona to places in California, Arizona and Texas, we consider that the significant circumstance was neither the mailing nor receipt of the letters but their effect upon Greene's state of mind. Greene is a resident of California and it is that state which is most interested in his mental and emotional well-being. Moreover, the tort took place only when Greene read or otherwise learned of the contents of the letters, and this event occurred in California.

Appellant raises the threshold argument that this counterclaim was barred by the one-year statute of limitations of Cal.Civ.Proc.Code § 340(3). Assuming *arguendo* that this statute is applicable to this cause of action, we disagree.

■■■ Under Cal.Civ.Proc.Code § 350,[2] the running of the statute is tolled so long as the defendant is out of the state. There was no showing or any contention made that Moore, a resident of Arizona, was in California a sufficient period of time in order to have

the statute run against the cause of action. Cvecich v. Giardino, 37 Cal.App. 2d 394, 99 P.2d 573 (1940). Moore has contended that a brief trip by Greene to Arizona to consult attorneys was sufficient to cause the one year statute to operate against Greene and bar the claim. No authority is cited in support of such an argument and we know of none. We hold that the cause of action is not barred by limitations.

■■■ Turning to the merits of the counterclaim, under California law one who has been wrongfully and intentionally subjected to embarrassment, humiliation, fear or other forms of mental anguish may recover compensatory damages even though he has suffered no physical injury and has sustained no monetary loss. State Rubbish Collectors Ass'n. v. Siliznoff, 38 Cal.2d 330, 336–338, 240 P.2d 282 (1952); Grimes v. Carter, 241 Cal.App.2d 694, 699, 50 Cal.Rptr. 808 (1966); Leavy v. Cooney, 214 Cal. App.2d 496, 502, 29 Cal.Rptr. 580 (1963). Where, as here, the victim has suffered no physical harm but only mental distress, the defendant is liable only when his conduct is outrageous or has gone beyond all reasonable bounds of decency. Cornblith v. First Maintenance Supply Co., 268 Cal.App.2d 564, 74 Cal.Rptr. 216 (1968); Perati v. Atkinson, 213 Cal. App.2d 472, 474, 28 Cal.Rptr. 898 (1963).

■■■ We consider that the trial court's instructions to the jury properly stated the applicable law.[3]

2. The relevant statute of limitations of California, the forum state, is applicable in this diversity suit. Guaranty Trust Co. v. York, 326 U.S. 99, 110, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

3. The trial court instructed the jury in pertinent part:

"The law imposes liability upon a wrongdoer who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. The important elements are that the act is intentional or reckless and the act is unreasonable and that the actor reasonably should have recognized his conduct as likely to cause the harm sustained.

"Given these elements, the law recognizes that mere words, oral or written, which result in physical injury or mental distress to another impose liability upon the actor.

"However, it is a complete defense to show that there was a lack of intent to inflict mental distress.

"Under the law, damages may be awarded to the counter-claimant for mental suffering caused by either intentional, reckless or outrageous conduct by the counterclaim defendant.

"The intentional infliction of wilful and outrageous conduct of severe, mental or emotional distress or disturbance, or severe psychological or psy-

Appellant asserts that the judgment should be reversed because, as a matter of law, his letters were not "outrageous" or "beyond all reasonable bounds of decency," and because there was no evidence that Greene suffered any mental distress as a result of the letters.

We reject both contentions. We hold that the question of whether appellant's letters were "outrageous" was one properly for the jury and that the jury's finding of fact was amply supported by substantial evidence.

The letters contained a barrage of offensive and insulting remarks unbecoming a sane human being. In the interest of brevity, we choose not to reprint the letters in their entirety but offer three typical excerpts in the margin.[4]

The evidence of Greene's mental distress resulting from Moore's letters was not overwhelming, but we consider that it was sufficient to sustain the jury verdict.[5]

(3) *Libel*

The jury found that Moore's letter of September 5, 1962 to Carlos R. Freitas constituted an actionable libel, and awarded Greene $500 general damages and $500 punitive damages (counterclaim three). The jury also found an actionable libel in Moore's September 4, 1963 letter to A. R. Grambling and awarded $500 general damages and $3,000 punitive damages (counterclaim one).

Under California conflicts law, applicable here, the tort of libel occurs at the place of publication of the libelous statement. Gallegos v. Union-Tribune Publishing Co., 195 Cal.App.2d 791, 797, 16 Cal.Rptr. 185 (1961). The place of publication of the Freitas letter was California, and of the Grambling letter, Texas. Nevertheless, applying the test of Reich v. Purcell, *supra,* we think the substantive law of California is applicable to both allegedly libelous statements. Libel is made actionable for the

---

chopathic injury in the absence of privilege constitutes an actionable tort for which the victim may recover damages if the actor intended or should have recognized that his conduct was likely to cause the resultant harm.

\*     \*     \*     \*     \*

"The general rule of damages for the intentional infliction of mental distress is that the injured party may recover for all detriment caused whether said detriment could have been anticipated or not. This is true even if the person's condition made him more susceptible to the possibility of ill effects than a normally healthy person would have been, and even if a normal person probably would have survived the same experience without any substantial injury.

"In accordance with the general rule, mental suffering constitutes an aggravation of damages when it naturally ensues from the act complained of, and in this connection mental suffering includes nervousness, grief, anxiety, worry, shock, humiliation and indignity as well as physical pain."

4. Moore's letter to A. R. Grambling, dated September 4, 1963, characterized Greene as a "cheap liar who would like to be vicious in his falsehoods, but cannot attain to such degree because of his own

cowardice." Moore's letter to Greene, dated December 5, 1959 and exceeding six vehement pages in length, contains this representative paragraph:

"Finally as to minor matters, your job is to assist the attorney—that's all you can do. Quit afflicting me. I am not going to put up with it. If you are too damn dumb to understand what is said to you plainly, get smart. I am not raising a child. I am representing a completely normal, able and fullgrown [sic] man. And I also know that that statement is the worst news of all."

Moore's three-page letter of May 12, 1962, warned Greene as follows: "You have seen me flay men, Mr. Greene. The instructions herein will be followed literally, or you may expect to be flayed in like degree and with the same permanence."

5. Greene testified at trial that the letter sent to Grambling made him feel sick and "full of fear and anxiety." Reporter's Transcript, pp. 2188, 2192. He later stated, "I think almost all the relations I had with Mr. Moore made me a little bit ill." R.T., p. 2193. And, "The entire period of my relationship with Mr. Moore was one of undue influence and mental distress." R.T. p. 2726.

purpose of protecting the interest of the victim's reputation. See, generally, Prosser, Law of Torts 185 (1964). Here, the allegedly libelous statements injured the reputation of Greene, a resident of California. Any damage suffered by him was suffered in California, and it is that state which is most interested in the protection of his reputation.

We consider that the one-year statute of limitations of Cal.Civ.Proc. Code § 340(3) is also applicable to both statements. The Texas statute is not applicable to the Grambling letter because the cause of action was at all times held by Greene, a resident of California. See Cal.Civ.Proc.Code § 361. The two counterclaims are not barred for the reasons given in Section (2), of this opinion, *supra*.

Libel is defined by Cal.Civ. Code § 45 to encompass "a false and unprivileged communication by writing * * * which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." This definition has been broadly construed and has been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation. Maidman v. Jewish Publications, Inc., 54 Cal.2d 643, 649, 7 Cal. Rptr. 617, 355 P.2d 265 (1960); Bates v. Campbell, 213 Cal. 438, 441, 2 P.2d 383 (1931).

An actionable libel must be both false and unprivileged. Snively v. Record Publishing Co., 185 Cal. 565, 574, 198 P. 1 (1921). Appellant does not seriously contend that either statement was true, but defends the statements on the ground that they were privileged. We consider each statement separately:

(a) *Moore-Freitas letter*

Moore asserts that the letter sent by him to Carlos R. Freitas, Greene's attorney in San Rafael, California, was privileged under Cal.Civ. Code § 47, Subs. 3(1), in that it was a communication sent, without malice, to a person interested in it by a person who was also interested. This privilege is conditional rather than absolute. It is lost if the publication is motivated by malice or by any cause other than the desire to protect the interest for the protection of which the privilege is given. Brewer v. Second Baptist Church, 32 Cal.2d 791, 797, 197 P.2d 713 (1948); Lesperance v. North American Aviation, Inc., 217 Cal.App.2d 336, 341, 31 Cal.Rptr. 873 (1963).

Malice is not inferred from the communication. Cal.Civ.Code § 48. There is a rebuttable presumption that the communication is made innocently and without malice. Swaffield v. Universal Ecsco Corp., 271 Cal.App.2d 147, 163, 76 Cal.Rptr. 680 (1969). Actual malice must be pleaded and proved by the victim of the alleged libel. Boyich v. Howell, 221 Cal.App.2d 801, 803, 34 Cal. Rptr. 794 (1963).

Greene properly pleaded malice in both counterclaims. We hold, however, that, as a matter of law, the allegedly libelous communication was not made with malice and, therefore, it was privileged as a communication of mutual interest.

The letter, eleven pages in length, was one of a series of letters between Moore and Freitas concerning Greene who was, at the time of the letters, in the process of discharging Moore as his attorney and engaging Freitas' firm. The allegedly libelous statement is as follows:

"The client's 'I didn't know what I was doing' routine is novel only in the sense that his every move actually made him richer instead of going awry, and now he wishes to be made richest of all by such an alibi. But his actions, not ours, completely belie his statement. He knows exactly what a deduction is and in writings for which he is solely responsible he has consistently sought both legitimate and illegitimate deductions for the purpose of reducing his taxable income over the entire period 1960 through May, 1962. The attorneys fees deducted were exactly as

shown in amount and purpose on his tax returns, agreed to by him in advance in writing, and in the presence of witnesses. The method of billing fees was agreed to by him and requested by him. Your client lies in saying that he 'assumes' otherwise, or 'does not know' what fees were for and what he agreed to in May, 1962. Such additional questions as may exist will be disposed of hereinafter."

Malice, according to the California Supreme Court, "has its foundations in ill-will, and is evidenced by an attempt wrongfully to vex, injure, or annoy another." Davis v. Hearst, 160 Cal. 143, 157, 116 P. 530, 537 (1911). Although Moore exhibits considerable malice toward Greene in other writings to or about him, we do not think that the language in this letter constitutes malice as defined by the California courts. The letter, read in its entirety, and all other evidence indicate that Moore attempted, not to injure Greene, but to inform Greene's newly-chosen attorney of his (Moore's) impressions of Greene obtained over a lengthy attorney-client relationship.

Absent proof of malice, the communication is privileged within the meaning of Cal.Civ.Code § 47, Subs. 3(1), as both Moore and Freitas had a common professional interest in Greene's legal and financial affairs.

### (b) Moore-Grambling letter

Moore defends the letter sent by him to A. R. Grambling, Greene's attorney in El Paso, Texas, on the ground that it was privileged because it was provoked by an earlier letter from Grambling—purportedly prompted by Greene—accusing Moore of theft. We can find no such specific privilege in California law. If, however, such privilege exists,[6] we do not think it is applicable here. Grambling's letter did not invite Moore to respond in the manner in which he did.

We hold that the letter in question was a false and unprivileged communication. Grambling wrote Moore on August 9, 1963, in pertinent part:

"Mr. Greene states that he has never received any part of these funds and he is demanding that you remit to him for these payments which, according to the endorsement on the note, you received on November 21, 1960. It is therefore requested that you mail to me your check for that amount at this time."

On September 4, 1963, Moore, in an admitted "fit of rage," answered Grambling with what Moore's own attorneys characterized as "a veritable tirade against Greene." Moore wrote, in part, "As to the subject matter of said letter, please be advised that your client is a cheap liar who would like to be vicious in his falsehoods, but cannot attain to such a degree because of his own cowardice." We think that the jury properly determined the letter to be an actionable libel.

### (4) Award of punitive damages

On counterclaims one, three and four, the jury awarded punitive damages in the amount of $5,500 in addition to general damages in the sum of $2,000. By reversing on counterclaim three, we reduce this award by $500 general damages and $500 punitive damages leaving awards totalling $5,000 punitive damages and $1,500 general damages. Appellant contends that this sum is excessive in light of his financial condition and that the court improperly instructed the jury regarding punitive damages.

We disagree. The trial court properly instructed the jury that, if they decided to award exemplary damages, they should, in determining the amount, take into consideration Moore's wealth and his ability to pay such damages. The question of excessiveness of damages is a matter for the discretion of the trial court. An award approved by that court will not be disturbed on appeal

6. Cf. Western Broadcast Co. v. Times-Mirror Co., 14 Cal.App.2d 120, 124, 57 P.2d 977 (1936); Prosser, Law of Torts, supra, at 804.

unless it appears that the jury was influenced by passion or prejudice. State Rubbish Collectors Ass'n. v. Siliznoff, *supra,* 38 Cal.2d at 340–341, 240 P.2d 282; Deevy v. Tassi, 21 Cal.2d 109, 120–121, 130 P.2d 389 (1942). We cannot find that the jury was so influenced.

We affirm the district court as to counterclaims one, four and five, and reverse as to counterclaim three. The case is remanded to the district court for entry of judgment consistent with this opinion.